

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José A. Feliciano Martes<br><br>Peticionario<br><br>v.<br><br>Sheraton Old San Juan<br><br>Recurrido | Certiorari<br><br>2011 TSPR 97<br><br>182 DPR _____ |

Número del Caso: CC        - 2009 - 1020

Fecha: 29 de junio de 2011

Tribunal de Apelaciones:

        Región Judicial de San Juan Panel IV

Juez Ponente:

        Hon. Andrés Salas Soler

Abogado de la Parte Peticionaria:

        Lcdo. Víctor M. Bermúdez Pérez

Abogados de la Parte Recurrida            :

        Lcdo. Yldefonso López Morales
        Lcda. Massiel Bermúdez Ríos

Materia:      Despido Injustificado; Daños y por Represalias, Etc.

Este documento constituye un documento oficial del Tribunal Supremo que está      sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José A. Feliciano Martes
        Peticionario

        v.

Sheraton Old San Juan
        Recurrido

Certiorari

CC-2009-1020

Opinión del Tribunal emitida por el Juez Asociado Señor Rivera García

En San Juan, Puerto Rico, a 29 de junio de 2011.

El recurso de autos nos concede la oportunidad de dilucidar si la violación del reglamento de una empresa por uno de sus empleados justifica que el patrono lo despida sin concederle la indemnización mínima dispuesta por la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185 *et seq.*, conocida como Ley de Despido Injustificado. Concretamente, debemos resolver si las ausencias no excusadas de dicho empleado a siete turnos de trabajo subsiguientes representan una violación reiterada del Manual de Asociados del Sheraton Old San Juan, el cual dispone que tres ausencias consecutivas del trabajador no excusadas constituyen un abandono del empleo sancionable con la destitución.

A su vez, el referido recurso también nos presenta la oportunidad de resolver dos controversias adicionales, a saber: (1) si tal despido violentó las protecciones instauradas por la Ley Núm. 139 de 26 de junio de 1968, según enmendada, 11 L.P.R.A. sec. 201, *et seq.*, conocida como Ley de Beneficio por Incapacidad Temporal*,* al patrono no reservarle el empleo al trabajador cuando éste anunció que se aprestaba a solicitar los beneficios del Seguro de Incapacidad No Ocupacional Temporera (SINOT); y (2) si el acto de solicitar al patrono que cumplimente los documentos necesarios para el trabajador poder radicar su solicitud de beneficios  al amparo de la Ley Núm. 139, *supra*, representa una *actividad protegida* por la Ley Núm. 115 de 20 de diciembre de 1991, 29 L.P.R.A. sec. 194a *et seq.*, conocida como Ley de Acción por Represalia del Patrono, la cual prohíbe la destitución de un empleado en represalia por éste acudir a uno de los foros dispuestos en la disposición legal indicada.

Por entender que el despido del peticionario fue justificado y que el mismo no violó la Ley Núm. 80, *supra*; la Ley Núm. 139, *supra*; ni la Ley Núm. 115, *supra*; confirmamos el dictamen emitido por el Tribunal de Apelaciones. Veamos.

I.

El Sr. José A. Feliciano Martes (peticionario o señor Feliciano Martes) laboró en el Hotel Sheraton Old San Juan (Hotel) como empleado del Departamento de

Ingeniería desde el 9 de octubre de 1998 hasta el 8 de junio de 2006, fecha en la que fue despedido. Los eventos conducentes a su destitución encuentran su inicio el viernes, 26 de mayo de 2006, cuando el peticionario comenzó a experimentar síntomas de migrañas y dolor de cabeza. Por causa de lo reseñado, el 27 de mayo de 2006,[1] el señor Feliciano Martes alegó que intentó comunicarse en tres ocasiones con su supervisor inmediato, el Sr. Luis Santiago Santos, con el propósito de excusarse por razón de enfermedad de su turno de trabajo pautado pare el 28 de mayo de 2006.[2] Sin embargo, los intentos del peticionario

---

[1] Los días 26 y 27 de mayo de 2006 eran los días libres del peticionario.

[2] La prueba desfilada en juicio es altamente contradictoria. En su testimonio en corte, el Sr. José A Feliciano Martes declaró que, supuestamente, el 27 de mayo de 2006 intentó comunicarse en una primera ocasión con su supervisor directo, el Sr. Luis Santiago Santos, llamándolo a su celular. Al activarse el correo de voz del teléfono celular por causa del señor Santiago Santos no contestar la llamada, el señor Feliciano Martes no dejó recado alguno. Posteriormente, el peticionario arguye que intentó comunicarse en una segunda ocasión con su supervisor llamando nuevamente a su celular y repitiéndose los mismos resultados experimentados en su primer intento. En un tercer intento, el empleado declara que, alegadamente, llamó al teléfono del Departamento de Ingeniería del Hotel, activándose el correo de voz de la oficina por nadie contestar. Al activarse dicho correo de voz, el señor Feliciano Martes testificó que no dejó mensaje alguno. Transcripción del Juicio en su Fondo, págs. 9-10 (Apéndice, Petición de *certiorari*, págs. 219-220).

Asimismo, el peticionario arguye que luego en la tarde el señor Santiago Santos se comunicó con él para devolverle la llamada. Según el peticionario, el señor Santiago Santos le preguntó "¿Qué pasó tipo?", a lo cual el señor Feliciano Martes contestó que le "cogió" la migraña y que cuando le "coge" la migraña le "coge" por varios días. Transcripción del Juicio en su Fondo, pág. 46 (Apéndice, Petición de *certiorari*, pág. 256). Acto seguido, según relata el peticionario, "se cortó la llamada". Íd. Surge del expediente que el señor Feliciano Martes no intentó comunicarse otra vez con el señor Santiago Santos.

Posteriormente -en contestaciones a un contrainterrogatorio realizado por el abogado de la parte recurrida- el peticionario reconoció que no se comunicó con su supervisor o con un gerente del Hotel los días 28, 29, 30, y 31 de mayo de 2006, ni el 1 de junio del mismo año, según el método ordenado por el Manual de Asociados. Transcripción del Juicio en su Fondo, págs. 47-49 (Apéndice, Petición de *certiorari*, págs. 257-259).

no rindieron frutos. Al no conseguir a su supervisor, desistió de comunicarse con éste y omitió dejarle mensaje alguno que notificara al patrono sobre su estado de salud o su determinación de ausentarse al empleo.[3]

Luego de no trabajar entre el 28 de mayo y el 1 de junio de 2006, y tras ausentarse sin excusa los días 4 y 5 de junio,[4] el peticionario acudió al Hotel el 5 de junio

---

Por otro lado, el señor Santiago Santos declaró que nunca recibió una llamada del peticionario entre el 27 de mayo de 2006 y el 1 de junio del mismo año, y que él nunca llamó al señor Feliciano Martes el 27 de mayo de 2006, contrario a lo testificado por el peticionario. Transcripción del Juicio en su Fondo, pág. 123 (Apéndice, Petición de *certiorari*, pág. 333). No obstante, el señor Santiago Santos sí reconoció que el documento que acreditaba el despido del peticionario sí contenía una oración que establecía que el señor Feliciano Martes se comunicó con el Hotel el 28 de mayo de 2006 para excusarse de su turno de empleo pautado para ese día, sin embargo, el señor Santiago Santos testificó que el peticionario no llamó para excusarse por el resto de los días en los cuales se ausentó a su turno de empleo y que él nunca recibió aviso de la supuesta notificación hecha por el peticionario a la empresa el 28 de mayo de 2006. Transcripción del Juicio en su Fondo, págs. 130-133 (Apéndice, Petición de *certiorari*, págs. 340-343). Véase, también, *Disciplinary Action Form*, Apéndice, Petición de *certiorari*, pág. 86. Aclaramos que el *Disciplinary Action Form* no fue preparado por el Señor Santiago Santos.

[3] El foro primario indica que existieron otras ocasiones en las cuales el señor Feliciano Martes "le notificó" a la empresa que no estaba apto para trabajar por estar enfermo. Así, el Tribunal de Primera Instancia entendió que el domingo, 28 de mayo de 2006, el coempleado del señor Feliciano Martes, el Sr. Ángel Cedeño, se comunicó con el peticionario para solicitarle que se reportara a trabajar antes de las 3:00 p.m., para así el señor Cedeño poder retirarse a otro compromiso que tenía. En respuesta, el peticionario, alegadamente, le indicó al señor Cedeño que no podía acudir al trabajo porque se encontraba enfermo. Véase, Transcripción del Juicio en su Fondo, págs. 10-11 (Apéndice, Petición de *certiorari*, págs. 220-221).
Subsiguientemente, el Sr. José Ríos -empleado del recurrido- alegadamente llamó al peticionario el miércoles, 31 de mayo de 2006, para preguntarle dónde se encontraban las llaves de la oficina del gerente general. Ante el petitorio del señor Ríos, el señor Feliciano Martes reiteró que se encontraba afectado de salud y que no podía cumplir con el pedido del señor Ríos. Véase, Transcripción del Juicio en su Fondo, págs. 111-112 (Apéndice, Petición de *certiorari* págs. 221-222). Ninguna de estas comunicaciones se originaron por el peticionario y tampoco involucraron al personal gerencial del Hotel, según lo ordena el manual de asociados.

[4] Los días 2 y 3 de junio de 2006 no eran días laborables del peticionario. En su totalidad, el señor Feliciano Martes se ausentó a siete turnos de trabajo.

del año indicado[5] con el fin de entregarle a la Directora de Recursos Humanos, la Sra. Roxana Olazagasti, un certificado médico,[6] al igual que su solicitud de beneficios por SINOT, entre otros documentos.[7] A su vez, la señora Olazagasti le inquirió al peticionario sobre las razones por las cuales se ausentó a siete turnos de empleo consecutivos sin excusarse y le informó que la empresa pretendía despedirlo por abandono de servicio, pero que dicha decisión iba a ser re-evaluada ante la entrega de los documentos señalados.[8]

---

[5] Al arribar a las facilidades del Hotel el 5 de junio de 2006, el señor Feliciano Martes fue escoltado por los oficiales de seguridad de la empresa a las oficinas de la Sra. Roxana Olazagasti, Directora de Recursos Humanos. Transcripción del Juicio en su Fondo, págs. 24-25 (Apéndice, Petición de *certiorari*, págs. 234-235). El peticionario reconoció que dicho procedimiento era efectuado solamente con personas que no eran empleados de la empresa. Transcripción del Juicio en su Fondo, pág. 51 (Apéndice, Petición de *certiorari*, pág. 261).

[6] Dicho certificado fue expedido por la Dra. Ana M. San Antonio el 31 de mayo de 2006. Transcripción del Juicio en su Fondo, pág. 13 (Apéndice, Petición de *certiorari*, pág. 223). El certificado reseñado fue firmado como recibido por la señora Olazagasti el 5 de junio de 2006. Transcripción del Juicio en su Fondo, pág. 14 (Apéndice, Petición de *certiorari*, pág. 224).

[7] Los documentos de SINOT provienen de la aseguradora privada MAPFRE. Transcripción del Juicio en su Fondo, pág. 23 (Apéndice, Petición de *certiorari*, pág. 233). Según arguye el peticionario, la señora Olazagasti le indicó que dejara los formularios de SINOT con su secretaria, la señorita Soleili. A su vez, la señorita Soleili le indicó al señor Feliciano Martes, según éste testificó en juicio, que la empresa no podía llenar los formularios de SINOT hasta tanto el médico no los llenara. Transcripción del Juicio en su Fondo, págs. 27-28 (Apéndice, Petición de *certiorari*, págs. 237-238).

[8] Como justificación por sus ausencias no excusadas, el señor Feliciano Martes le indicó a la señora Olazagasti que estuvo enfermo y bajo supuesto tratamiento y que, alegadamente, todo el Departamento de Ingeniería conocía que estaba reportado enfermo. Transcripción del Juicio en su Fondo, pág. 25 (Apéndice, Petición de *certiorari*, pág. 235). Según testificó el peticionario, la señora Olazagasti le pidió varios días para examinar el certificado médico que le fue entregado por el señor Feliciano Martes, ya que la empresa había decidido despedir al peticionario. La señora Olazagasti confirmó lo anterior en su testimonio en juicio.

Posteriormente, el señor Feliciano Martes regresó al Hotel el 8 de junio de 2006. En dicha ocasión la señora Olazagasti le manifestó que, luego de haber re-evaluado los documentos entregados por el peticionario, el Hotel había decidido despedirlo por haber violado el Manual de Asociados vigente a la fecha de su destitución al no presentarse a trabajar por más de tres días consecutivos.[9]

A la luz de los hechos relatados, el 27 de noviembre de 2006 el señor Feliciano Martes presentó en el Tribunal de Primera Instancia una querella en contra del Hotel al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. sec. 3118 *et seq.*, conocida como Ley de Procedimiento Sumario para Reclamaciones de Obreros y Empleados. En su querella, el señor Feliciano Martes alegó que fue despedido sin justa causa y en represalia por haber informado a su patrono que se aprestaba a solicitar los beneficios provistos por la Ley Núm. 139, *supra*. Igualmente, argumentó que el patrono violó el referido estatuto, al no reservarle el empleo mientras se encontraba en supuesto tratamiento médico.

---

[9] De acuerdo a su testimonio en corte, el peticionario reconoció que no había observado lo dispuesto en el Manual de Asociados respecto al requerimiento de llamar y excusarse con su patrono en casos de enfermedad. Transcripción del Juicio en su Fondo, págs. 67-71 (Apéndice, Petición de *certiorari*, págs. 277-291).

Por otra parte, la Sra. Olazagasti asintió en sus declaraciones en el juicio que el Manual de Asociados no contenía una norma expresa que exigiera a todo empleado llamar a su supervisor día a día durante el término consecutivo por el cual estuviese enfermo. Transcripción del Juicio en su Fondo, págs. 103-105 (Apéndice, Petición de *certiorari*, págs. 313-315). No obstante, ésta testificó que tal práctica era conocida por los empleados y que se les adiestraba al respecto con regularidad. Transcripción del Juicio en su Fondo, págs. 65-66.

Como reparación por sus alegados daños, el peticionario reclamó, esencialmente: (1) ser reinstalado en su antiguo puesto; (2) recibir el pago retroactivo de los salarios y beneficios marginales dejados de devengar desde la fecha de su despido hasta el momento de su restitución en el empleo; (3) el cobro de la indemnización mínima dispuesta por la Ley Núm. 80, *supra*, equivalente, según él, a $14,585.41; y (4) la suma de $300,000.00 por los daños y perjuicios alegadamente sufridos como consecuencia de los actos imputados al recurrido.

El 16 de julio de 2008 se celebró el juicio en su fondo.[10] Luego de recibir prueba documental y testifical de ambas partes, el foro primario emitió su Sentencia el 25 de febrero de 2009.[11] En ésta, el Tribunal de Primera Instancia determinó, fundamentalmente, que: (1) el despido del empleado fue injustificado; (2) el patrono violó la Ley Núm. 139, *supra*, al no reservarle el empleo al señor Feliciano Martes mientras éste recibía tratamiento médico; y (3) el patrono violó la Ley Núm. 115, *supra*, por haber tomado represalias contra el señor Feliciano Martes tras éste haber solicitado al Hotel que preparara los documentos necesarios para él poder presentar su reclamación a SINOT.

---

[10] La prueba desfilada en juicio consistió en el testimonio del señor Feliciano Martes a favor de sí y los testimonios del Sr. Luis Santiago Santos y la Sra. Rosana Olazagasti a favor del recurrido.

[11] Esta Sentencia fue notificada el 3 de marzo de 2009.

Consecuentemente, el Tribunal de Primera Instancia ordenó al patrono a pagar al peticionario las siguientes partidas: (1) la suma de $45,000.00, más una cantidad similar por concepto de doble penalidad por las angustias y los sufrimientos mentales alegadamente sufridos por el señor Feliciano Martes; (2) la reposición del señor Feliciano Martes en su empleo; (3) los salarios y beneficios marginales dejados de percibir por el peticionario desde la fecha de su destitución hasta que éste fuese restituido a su antiguo puesto, más una cantidad similar por concepto de doble penalidad;[12] y (4) el 25% de las cantidades básicas anteriormente indicadas por concepto de honorarios de abogado.[13]

Luego de varios trámites procesales, el 23 de abril de 2009 el recurrido presentó ante el Tribunal de Apelaciones un recurso de apelación. En dicho recurso, el Hotel le imputó al foro sentenciador el haber errado al determinar que el despido del peticionario: (1) fue injustificado; (2) violó el periodo de reserva dispuesto por la Ley Núm. 139, *supra*; y (3) que fue motivado por un ánimo de represalia del patrono en violación de la Ley

---

[12] El 13 de marzo de 2009, el peticionario presentó ante el Tribunal de Primera Instancia una moción solicitando determinaciones de hechos adicionales, al igual que la emisión de una sentencia enmendada en la cual se hiciere constar que, a la fecha de su despido, devengaba un salario a razón de $10.16 la hora, lo cual se traducía en un salario mensual de $1,625.00, y que, además, éste tenía derecho a un plan médico, vacaciones, días por enfermedad y un plan privado de retiro. Apéndice, Petición de *certiorari*, págs. 178-179. En una Sentencia Nunc Pro Tunc emitida el 19 de marzo de 2009 y notificada el 25 de marzo del mismo año, el Tribunal sentenciador acogió las enmiendas imploradas. Íd., págs. 184-193.

[13] Apéndice, Petición de *certiorari*, pág. 177.

Núm. 115, *supra*. Además, el Hotel cuestionó la apreciación de la prueba ejercida por el juzgador de los hechos y, como resultado, procedió a presentar ante el Tribunal *a quo* una copia de la transcripción de la prueba oral desfilada en el juicio.

Con el beneficio de dicha transcripción y de los alegatos de ambas partes, el 28 de septiembre de 2009,[14] el foro apelativo intermedio dictó Sentencia y revocó al Tribunal de Primera Instancia. Al así hacerlo, determinó que, a la luz de la totalidad de la prueba, el despido del señor Feliciano Martes estuvo justificado. En consecuencia, el foro apelativo intermedio desestimó todas las causas de acción del peticionario.[15]

Inconforme con el dictamen del Tribunal *a quo*, el señor Feliciano Martes acude ante nos mediante un recurso de *certiorari* presentado el 30 de noviembre de 2009. En dicho recurso, el peticionario le imputa al Tribunal de Apelaciones los siguientes errores:

Primer Error:

Erró el Honorable Tribunal de Apelaciones al haber revocado la Sentencia emitida por el Tribunal de Primera Instancia sustituyéndose las determinaciones de hechos que emitiera dicho foro contenidas en la misma que a su vez estaban basadas en determinaciones de credibilidad.

---

[14] Esta decisión fue notificada a las partes el 1 de octubre de 2009.

[15] El 16 de octubre de 2009 el peticionario presentó ante el Tribunal de Apelaciones una moción de reconsideración. Ésta fue declarada No Ha Lugar el 23 de octubre de 2009.

Segundo Error:

Erró el Honorable Tribunal de Apelaciones al haber revocado al Honorable Tribunal de Primera Instancia al haberse sustituido las conclusiones de derecho que fueran ampliamente fundamentadas por el Honorable Tribunal de Primera Instancia en la Sentencia revocada[; y]

Tercer Error:

Incurrió en error el Honorable Tribunal de Apelaciones al haber revocado al Tribunal de Primera Instancia al haber ignorado consideraciones de política pública, así como principios básicos de hermenéutica aplicables a controversias que envuelven la interpretación de estatutos laborales.[16]

Posteriormente, el 7 de mayo de 2010 ordenamos a la Secretaria de este Tribunal a expedir Mandamiento de *Certiorari*.[17] Ambas partes han presentado sus respectivos alegatos. Por ello, contando con sus comparecencias, procedemos a elaborar el marco jurídico aplicable a las controversias reseñadas.

II

*A. La normativa aplicable a los despidos de empleados contratados por tiempo indeterminado.*

*1. La Ley Núm. 80, supra, y el despido por motivo de violaciones reiteradas a los reglamentos de una empresa.*

La Ley Núm. 80, *supra*, fue aprobada con el fin primordial de proteger "de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo mediante la aprobación de una ley que, a la vez que otorgue unos remedios más justicieros y consubstanciales

---

[16] Alegato de la Parte Peticionaria, págs. 7-8.

[17] Dicha orden fue acatada el 19 de mayo de 2010.

con los daños causados por un despido injustificado, desaliente la incidencia de este tipo de despido". Exposición de Motivos de la Ley Núm. 80, *supra*, Leyes de Puerto Rico, pág. 268. Véanse, también: Vélez Cortés v. Baxter Healthcare Co., 2010 T.S.P.R. 110, pág. 12, 179 D.P.R. ___ (2010), citando a Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364 (2001); Jusino *et als*. v. Walgreens, 155 D.P.R. 560, 571 (2001); Vélez Rodríguez v. Pueblo Int'l, Inc., 135 D.P.R. 500, 510 (1994).

En aras de desalentar los despidos injustificados, la Ley Núm. 80, *supra*, establece que "aquellos empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) están contratados sin tiempo determinado; (2) reciben una remuneración; y (3) son despedidos de su cargo, sin que haya mediado una justa causa", tienen derecho al pago de una compensación por su patrono -además del sueldo devengado- típicamente denominado como *la mesada*.[18] Orsini García v. Srio. de Hacienda, 2009 T.S.P.R. 190, pág. 20, 177 D.P.R. ___ (2009). Véanse, también: 29 L.P.R.A. sec. 185a;[19] Díaz v. Wyndham Hotel

---

[18] Hemos establecido que "[p]or medio de la mesada se busca particularmente compensar al empleado por el daño sufrido; proveerle de una suma de dinero que le permita atender sus necesidades básicas en lo que consigue un nuevo empleo, y... 'reconocer el tiempo dedicado por el obrero a la empresa'". Vélez Cortés v. Baxter Healthcare Co., supra, pág. 16.

[19] El Art. 1 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185 *et seq.*, conocida como *Ley de Despido Injustificado*, fue enmendado por la Ley Núm. 128 de 7 de octubre de 2005. Hoy, en lo pertinente, este artículo establece que la mesada consiste en:

"(a) el sueldo correspondiente a dos (2) meses por concepto de indemnización, si el despido ocurre dentro de

Corp., supra, pág. 375.  Sin embargo, amerita señalar que "[e]n Puerto Rico no existe una prohibición absoluta contra el despido de un empleado. Si existe justa causa éste puede ser despedido".  Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763, 775 (1992).  Véase, también, Díaz v. Wyndham Hotel Corp., supra, págs. 377-378.

A pesar de que la Ley Núm. 80, *supra*, no define explícitamente el término *justa causa*, ésta, junto a su jurisprudencia interpretativa, establece ciertas guías que delimitan el alcance de dicho término, brindando claridad en torno a si determinado despido convierte al empleado destituido en acreedor o no de la mesada previamente indicada.  Véanse: Jusino *et als*. v. Walgreens, supra, pág. 572; Narváez v. The Chase Manhattan Bank, 120 D.P.R. 731, 737 (1988); R. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo en el derecho

los primeros cinco (5) años de servicio; el sueldo correspondiente a tres (3) meses si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; el sueldo correspondiente a seis (6) meses si el despido ocurre luego de los quince (15) años de servicio;

(b) una indemnización progresiva adicional equivalente a una (1) semana por cada año de servicio, si el despido ocurre dentro de los primeros cinco (5) años de servicio; dos (2) semanas por cada año de servicio, si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; tres (3) semanas por cada año de servicio, luego de haber completado quince (15) años o más de servicio.

Los años de servicio se determinarán sobre la base de todos los periodos de trabajo anteriores acumulados que el empleado haya trabajado para el patrono antes de su cesantía, pero excluyendo aquéllos que por razón de despido o separación anterior le hayan sido compensados o hayan sido objeto de una adjudicación judicial". 29 L.P.R.A. sec. 185a (2010).

Para criterios adicionales en torno al modo correcto de computar la mesada, según lo requiere la ley, véase Ley Núm. 80, *supra*, 29 L.P.R.A. secs. 185 (d), 185(j), 185(g) & 185(l).

laboral puertorriqueño, Hato Rey, Ramallo Bros. Printing, Inc., 2007, pág. 170.

Así, el inciso (c) del Art. 2 de la Ley Núm. 80, *supra*, dispone, en lo pertinente, que "[s]e entenderá por justa causa para el despido... [la] [v]iolación reiterada por [un] empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos haya sido suministrada oportunamente al empleado".[20]   29 L.P.R.A. sec. 185b(c).   Véase, también, Santiago v. Kodak Caribbean, Ltd., supra, pág. 776.   Además, la citada disposición legal añade en su último párrafo que "[n]o se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento".   29 L.P.R.A. sec. 185b(c).

De lo anterior se desprende que la violación a las reglas de un patrono podría ser motivo justificado para el despido de un trabajador, siempre y cuando: (1) la violación a los reglamentos sea reiterada; (2) las reglas y los reglamentos sean razonables; (3) se suministre oportunamente copia escrita de los mismos al trabajador; y (4) el despido del empleado no se haga por mero capricho del patrono o sin razón relacionada con el buen y normal

---

[20] Ya en Mercedes Bus Line, Inc. v. Tribunal, 70 D.P.R. 690, 695 (1949), habíamos establecido, al interpretar la Sec. 1 de la Ley Núm. 43 de 28 de abril de 1930, (derogada) –una de las precursoras de la Ley Núm. 80, *supra*- que "la desobediencia a las reglas y órdenes del patrono, son motivos justificados para despedir a un empleado".

funcionamiento del establecimiento. Véase, Delgado Zayas, *op. cit.*, pág. 172. Véanse, también: Rivera Torres v. Pan Pepín, Inc., 161 D.P.R. 681, 690 (2004);[21] Jusino *et als.* v. Walgreens, supra, pág. 573, citando a Rivera Águila v. K-Mart de P.R., 123 D.P.R. 599 (1989); Santiago v. Kodak Caribbean, Ltd., supra, pág. 776; Dept. del Trabajo y Recursos Humanos, Guía Revisada para la Aplicación de la Ley Núm. 80 de 30 de mayo de 1976, enmendada, Hato Rey, 2000, pág. 35.

En Srio. del Trabajo v. I.T.T., 108 D.P.R 536, 542-543 (1979),[22] al interpretar el alcance del Art. 2 de la Ley Núm. 80, *supra*, establecimos que la referida ley "no favorece el despido como sanción a la primera falta".[23] Véanse, también: Rivera Torres v. Pan Pepín, Inc., supra, pág. 690; Dept. del Trabajo y Recursos Humanos,

---

[21] En Rivera Torres v. Pan Pepín, Inc., 161 D.P.R. 681, 694 (2004), resolvimos "que dejar cuatro unidades de productos *expirados* en las góndolas de un comercio -si bien es una falta seria cuya *reiteración* podría afectar grandemente la operación e imagen de la empresa- por sí sola no [era] una omisión que amerit[ase] el remedio radical de despedir al empleado". (Énfasis en el original.)

[22] En Srio. del Trabajo v. I.T.T., 108 D.P.R. 536 (1979), luego de examinar las sanciones impuestas por el reglamento del patrono por distintas faltas de conducta, al igual que el sistema de disciplina progresiva para cada una de ellas, resolvimos que era injustificado el despido de un empleado quien, en una sola ocasión, dio una razón falsa para obtener una licencia y ausentarse de su trabajo durante ocho días laborables. Al comparar la norma violentada por el empleado -hacer una declaración falsa en los records de la compañía- y el castigo impuesto por la primera ofensa -el despido-, determinamos que tal penalidad era irrazonable y arbitraria en comparación con las otras normas del reglamento las cuales no despedían al empleado hasta que éste violara la misma regla por tercera o cuarta ocasión. Igualmente, determinamos que la falta aislada y no repetitiva de mentir al patrono, aunque violaba el reglamento de la empresa, no ameritaba la sanción del despido luego de la primera ofensa ya que tal conducta no afectaba el buen y normal funcionamiento de la empresa.

[23] Arribamos a dicha conclusión mediante la presencia de las voces *patrón* y *reiterada* en los incisos (a) y (c) del articulado indicado. Srio. del Trabajo v. I.T.T., supra, págs. 542-543.

*supra*, pág. 35.  ("[U]na violación aislada a los reglamentos o sus enmiendas no constituye causa justificada para despedir a un trabajador").  Sin embargo, también fuimos claros en pronunciar que "el citado estatuto[] no excluye de la sanción o despido en primera o única ofensa aquella falta cuya intensidad de agravio así lo requiera en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran".  Srio. del Trabajo v. I.T.T., supra, pág. 543.  Véase, también, Rivera Torres v. Pan Pepín, Inc., supra, pág. 690.

Más aún, dilucidando la primera oración del último párrafo del Art. 2 de la ley bajo examen, esta Curia dispuso que

> se entenderá por justa causa para el despido la que tiene origen[,] no ya en el libre arbitrio del patrono, sino en razón vinculada a la ordenada marcha y normal funcionamiento de la empresa.  Desviándose[,] aunque de manera cualificada[,] de su premisa esencial de reiteración o persistencia en falta como elemento integrante de justa causa para el despido, la ley considera una sola ofensa o primera falta como tal justa causa si por su gravedad y su potencial de daño pone en riesgo el orden, la seguridad o la eficiencia que constituyen la normalidad operatoria del establecimiento.  Srio. del Trabajo v. I.T.T., supra, pág. 543.

Es por todo lo anterior que el despido como sanción por una primera ofensa o por un acto aislado resulta ser la excepción y no la norma.  Como bien resolvimos en Srio. del Trabajo v. I.T.T., supra,

> [l]a falta o acto aislado que dé lugar al despido del empleado en primera ofensa ha de ser de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter, tan lesivo

a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración para separarlo del establecimiento. Íd., págs. 543-544.

Ciertamente ese requisito de *reiteración* -con las excepciones explicadas- aplica cuando un patrono despide a su empleado por éste violar las normas del reglamento de la empresa. Sin embargo, además del elemento imprescindible de reiteración, es imperativo que las reglas sean razonables. Como lo sugieren las Guías para la Aplicación de la Ley Núm. 80 del Departamento del Trabajo, aunque

> [t]odo patrono tiene derecho a establecer las reglas y normas básicas que entienda resultan necesarias para garantizar la más eficiente operación de su negocio... esto no significa que el patrono disfruta de un cheque en blanco para fijar normas. *Es requisito indispensable que las mismas guarden relación con la ordenada marcha y normal funcionamiento del negocio, o sea, que sean razonables.*[24] (Énfasis nuestro.) <u>Dept. del Trabajo y Recursos Humanos</u>, *supra*, pág. 36.

Igualmente, en <u>Santiago v. Kodak Caribbean, Ltd.</u>, supra, págs. 775-776,[25] añadimos que

---

[24] "La razonabilidad [de un reglamento] es un concepto muy subjetivo y sutil. Lo que resulta razonable en un establecimiento no tiene necesariamente que serlo en otro establecimiento. Consecuentemente una regla puede ser razonablemente aplicada en determinadas circunstancias e irrazonablemente en otras circunstancias, aun cuando los hechos a que se aplique sean los mismos *prima facie*. Además, los reglamentos bajo la Ley Núm. 80, *supra*, no sólo deben ser razonables intrínsecamente sino que, además, deben ser administrados razonablemente". <u>Dept. del Trabajo y Recursos Humanos</u>, *supra*, pág. 36.

[25] En <u>Santiago v. Kodak Caribbean, Ltd.</u>, 129 D.P.R. 763 (1992), determinamos que el despido de una empleada que se había ausentado del trabajo por un total de 83 días en los últimos 13 meses de empleo como vendedora de Kodak, por motivo de una condición emocional, fue injustificado, ya que el reglamento de la empresa le proveía a la empleada el beneficio de un plan de "incapacidad a corto plazo" el cual atendía las ausencias notificadas de la empleada en casos prolongados de enfermedad.

> [e]l manual de una empresa que contiene las reglas y los reglamentos del trabajo y que establece las normas, los beneficios y los privilegios que disfrutará el empleado forman parte del contrato de trabajo. Como regla general, un patrón de incumplimiento de estas normas o reglas podría dar lugar a un despido justificado. Sin embargo, *la ausencia de razonabilidad de estas normas podría convertir el despido en uno caprichoso o arbitrario y, por lo tanto, injustificado*. De otra parte, los beneficios y privilegios allí establecidos constituyen derechos del empleado y un despido en violación a éstos también resultaría en un despido injustificado. (Énfasis nuestro.)

A su vez, comprendiendo que el manual de una empresa constituye parte del contrato de empleo, hemos establecido que, ante una controversia originada en el despido de un obrero por éste haber violentado las normas esbozadas en el manual de empleados, las cláusulas de dicho reglamento deben ser interpretadas

> las unas por las otras, atribuyendo a las dudosas el sentido que resulte del conjunto de todas... [y], por ser [el manual] un contrato típico de adhesión, en la preparación del cual el empleado no participó, las cláusulas obscuras o ambiguas deben ser interpretadas liberalmente a favor de éste, promoviendo así, hasta donde sea posible, la igualdad jurídica en materia de contratación. (Citaciones internas omitidas.) Santiago v. Kodak Caribbean, Ltd., supra, pág. 776.

Por último, amerita recordar que esta Curia ha dispuesto palmariamente cuál es el proceso probatorio relacionado con una reclamación por despido injustificado. Así, una vez un empleado insta una causa de acción contra su patrono al amparo de la Ley Núm. 80, *supra*, nuestro ordenamiento legal es claro en disponer que "el patrono vendrá obligado a alegar, en su contestación a la demanda,

los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de cumplir con" el pago de la mesada. 29 L.P.R.A. 185k. De tal forma, el artículo citado establece una presunción en contra del patrono, mediante la cual "'todo despido es injustificado hasta tanto el patrono demuestre justa causa para su acción'". Díaz v. Wyndham Hotel Corp., supra, pág. 378, citando a Báez García v. Cooper Labs., Inc., 120 D.P.R. 145 (1987). Como resultado, se le impone al "patrono la carga probatoria de justificar en la afirmativa su actuación, exponiendo en la contestación a una querella los hechos que dieron origen al despido". Íd., pág. 152.

Por causa de la presunción reseñada, "la norma de que, en toda reclamación judicial, es al reclamante al que le corresponde la obligación de probar con preponderancia de la prueba sus alegaciones para poder prevalecer en el pleito, encuentra una excepción en los casos de reclamación de indemnización por despido injustificado radicados al amparo de la Ley Núm. 80, supra". Díaz v. Wyndham Hotel Corp., supra, págs. 378-379. Ello, pues, "[u]na vez... el patrono interpone como defensa afirmativa que ha mediado justa causa para el despido, le corresponde a éste entonces probar, por preponderancia de la prueba, que el despido estuvo justificado". Miranda Ayala v. Hosp. San Pablo, 170 D.P.R. 734, 738, citando a Díaz v. Wyndham Hotel Corp., supra, págs. 378-379.

Comprendiendo los contornos jurídicos de la Ley Núm. 80, *supra*, procede examinar las disposiciones del Manual de Asociados del Hotel que son pertinentes al caso de autos.

*2. El Manual de Asociados del Hotel Sheraton Old San Juan y la reglamentación del ausentismo.*

Como bien hemos reconocido hasta el momento, un empleado puede ser despedido de su empleo por la violación reiterada de las normas o reglas razonables asentadas en un reglamento de la empresa. En el caso que nos ocupa, el patrono alega que el despido del señor Feliciano Martes fue justificado por éste violentar reiteradamente las normas de ausentismo establecidas en el Manual de Asociados (Manual). Por tal motivo, a continuación detallamos aquellas normas del Manual que, al momento del despido del peticionario, regulaban la asistencia y las ausencias de los empleados del Hotel.

En primer lugar, el Manual, bajo el acápite de *prácticas de empleo y ejecutorias*, implanta una política de asistencia al trabajo aplicable a todo empleado del Hotel. Según el reglamento, dicha política de asistencia consiste en lo siguiente:

> Es importante que los asociados del [Hotel] asistan regularmente a su trabajo. Nuestra habilidad de atender satisfactoriamente las necesidades de los huéspedes depende de tener la asistencia de nuestro personal adiestrado durante la semana de trabajo. Es importante que todo el mundo esté en su trabajo durante las horas programadas porque dependemos unos en los otros. Cuando los asociados llegan tarde o cuando el asociado se ausenta, el trabajo de los

demás se atrasa y nuestro trabajo no puede ser completado a tiempo o según planificado. *La tardanza o el ausentismo constante son base para el despido.* (Énfasis nuestro.) Manual de Asociados del Hotel Sheraton Old San Juan, revisado y efectivo desde el 11 de noviembre de 2004, Acápite 5-f, pág. 45, Apéndice, Petición de *certiorari*, pág. 135.

Más adelante, el Manual dispone que "[s]i un asociado va a ausentarse de su turno de trabajo, necesita notificarlo al jefe [de su] departamento... *por lo menos dos horas antes* de la hora en que... debe reportarse a trabajar". (Énfasis nuestro.) *Íd.*, en el Acápite 5-f-ii. A su vez, cuando el empleado no logre comunicarse con su supervisor directo en la primera llamada, "*[e]s la responsabilidad del asociado llamar nuevamente hasta que haya logrado comunicarse con su supervisor, gerente y/o jefe de departamento*". (Énfasis en el original.) *Íd.*, Acápite 5-f-iv (Apéndice, Petición de *certiorari*, pág. 136).

En segundo lugar, el Manual establece que las ausencias excesivas y no autorizadas están absolutamente prohibidas y pueden ser motivo de despido. *Íd.*, Acápite 5-h (Apéndice, págs. 141 y 142). Igualmente, el abandono del trabajo —el cual se define como *la falta del empleado reportarse al trabajo o de llamar explicando su ausencia por tres días de trabajo consecutivos*— es considerado por las normas de la empresa como una renuncia voluntaria sin la cortesía de proveer una notificación o, en otras palabras, como base para el despido inmediato. Apéndice,

Petición de *certiorari*, págs. 139 y 144 (Manual, págs. 49 y 54).

Por último, amerita señalar que es la práctica del Hotel familiarizar al asociado con las políticas, procedimientos y los estándares de la empresa. Dicha familiarización se efectúa mediante la orientación obligatoria de todos los asociados, cuya fecha es pautada desde el momento en que el empleado es contratado. Íd., pág. 97. (Manual, pág. 7).

Luego de haber delineado las disposiciones del Manual pertinentes a la resolución del caso ante nos, pasemos a examinar el procedimiento y las protecciones provistas al amparo de la Ley Núm. 139, *supra*.

*B. La solicitud de beneficios por incapacidad no ocupacional.* La Ley Núm. 139, *supra*, fue promulgada por el legislador con el fin de ofrecer a los trabajadores puertorriqueños -y a sus beneficiarios- una protección adecuada "contra la pérdida de salarios en caso de incapacidad [del trabajador] que no esté relacionada con el empleo". Exposición de Motivos, Ley Núm. 139, *supra*, 1968 Leyes de Puerto Rico pág. 368. Como resultado, el citado estatuto estableció un seguro para cubrir el riesgo por incapacidad no ocupacional, el cual "[p]rovee determinados beneficios monetarios para atenuar la pérdida de salarios cuando un obrero no puede desempeñar los deberes de su empleo por padecer de una inhabilidad para ello causada por una lesión o enfermedad que no esté

relacionada con el empleo" o un accidente de automóvil. Meléndez Rivera v. Asoc. Hospital del Maestro, 156 D.P.R. 828, 842-843 (2002). Véase, también, 11 L.P.R.A. secs. 202 (g) y 203(a).

Para que un obrero goce de las protecciones provistas por la Ley Núm. 139, *supra*, será imprescindible que éste "haya radicado una reclamación de beneficios por incapacidad". 11 L.P.R.A. sec. 202(d). Dicha reclamación debe hacerse de acuerdo al Reglamento Núm. 3052 del Departamento del Trabajo y Recursos Humanos, para la Reclamación y el Pago de los Beneficios Concedidos al Amparo de la Ley Núm. 139, aprobado el 8 de noviembre de 1983, al igual que la Sec. 3 de la Ley Núm. 139, *supra*. 11 L.P.R.A. Sec. 203(k).

Según provisto por el Reglamento Núm. 3052, *supra*, la reclamación indicada debe ser presentada por escrito ante el Director del Negociado de Beneficios a Choferes y a Personas con Incapacidad No Ocupacional del Departamento del Trabajo y Recursos Humanos[26] (Negociado)-de haberse acogido el patrono al plan público administrado por el Secretario del Departamento del Trabajo y de Recursos Humanos (Departamento)- o ante el Administrador del plan privado correspondiente[27] -si el patrono se ha acogido a un

---

[26] La Asamblea Legislativa, mediante la promulgación de la Ley Núm. 262 de 30 de diciembre de 1995, fusionó el Negociado de Seguro Social para Choferes y Otros Empleados y el Programa de Seguros por Incapacidad No Ocupacional Temporal para crear el Negociado de Beneficios a Choferes y a Personas con Incapacidad No Ocupacional. Véase, Exposición de Motivos, Ley Núm. 262 de 30 de diciembre de 1995, 1995 Leyes de Puerto Rico (Parte 2), págs. 1767-1768.

plan aprobado por el Secretario del Departamento para ser administrado por una compañía de seguros autorizada o si el patrono opta por actuar como su propio asegurador-. La reclamación debe someterse, a más tardar, [tres] meses[28] a partir del comienzo o recurrencia de la incapacidad, a no ser que el Director del Negociado extienda dicho término por entender que existió justa causa para la presentación tardía de la reclamación. Reglamento Núm. 3052, *supra*, pág. 4, Secs. 3.5 y 3.6 (a); 11 L.P.R.A. Sec. 203(k)(1). Sin embargo, ninguna reclamación presentada "después de transcurrido un año a partir de la fecha del comienzo de la incapacidad" podrá ser considerada oportuna o acreedora de los beneficios provistos por la Ley Núm. 139, *supra*. Reglamento Núm. 3052, *supra*, pág. 4, Sec. 3.6(a); 11 L.P.R.A. Sec. 203(k) (1).

Al presentar el formulario necesario para solicitar los beneficios de la disposición legal bajo análisis, el empleado deberá acompañarla con el "informe (1) del patrono (2) del reclamante y (3) el certificado del médico

---

[27] Según dispone el Reglamento Núm. 3052, *supra*, la palabra "*Administrador* significa, para fines de un Plan Privado, la compañía aseguradora o patrono actuando como su propio asegurador, cualesquiera de éstos que haya asumido el pago de beneficios bajo el plan". Reglamento Núm. 3052, *supra*, pág. 1, Sec. 2(A). A su vez, el término "*Plan Privado* significa un plan aprobado por el Secretario [del Departamento del Trabajo y Recursos Humanos] para ser administrado por una compañía de seguros autorizada o un patrono actuando como su propio asegurador para el pago de beneficios según lo dispone la Sección 5 de la Ley [Núm. 139, *supra*]". Íd., Sec. 2(E).

[28] El Reglamento Núm. 3052, *supra*, dispone para un término de dos meses, no obstante, debido a que la Ley Núm. 139, *supra*, provee un término de tres meses que resulta más favorable al empleado, obviamos el contenido del reglamento. Ciertamente la ley debe prevalecer sobre el reglamento.

que ha examinado al reclamante".[29]  Reglamento Núm. 3052, *supra*, pág. 4, Sec. 3.6(a).  Véanse, también: 11 L.P.R.A. Sec. 203(k)(2) y (3); Íd., pág. 6, Sec. 3.7.  Una vez la solicitud sea presentada, el Director del Negociado o el Administrador del plan privado deberá hacer una determinación sobre la elegibilidad o no del reclamante para gozar de los beneficios provistos por la Ley Núm. 139, *supra*, a la luz de los requisitos especificados en la Sec. 3 de la mencionada disposición legal.  Reglamento Núm. 3052, *supra*, pág. 14, Sec. 4.1.  Véase, también, 11 L.P.R.A. Sec. 204(a).

Si la determinación no favorece al empleado, éste podrá valerse del proceso de reconsideración ante el Director del Negociado y de una posible apelación administrativa ante el Secretario del Departamento una vez el Director confirme la determinación de no-elegibilidad del empleado.  11 L.P.R.A. Sec. 204(a) y (b).  Igualmente, el trabajador afectado podrá reconsiderar la determinación del Secretario del Departamento  si ya se valió de la vía apelativa administrativa indicada y, de resultar ésta adversa para el obrero, éste podrá acudir en revisión judicial ante el Tribunal de Apelaciones, según provee la ley bajo estudio.  Véase, 11 L.P.R.A. Sec. 204 (b)-(d).  Por el contrario, si se determina que el trabajador es elegible a los beneficios provistos por SINOT, el

---

[29] "Si la reclamación no estuviese debidamente completada y fuese devuelta al reclamante con ese propósito, se le concederán treinta (30) días a partir de la fecha en que se le envió la misma para que la complete y la devuelva".  Íd., Sec. 3.6(a).

empleado podrá recibir las cantidades monetarias dispuestas en la Sec. 3 del reseñado precepto legal. 11 L.P.R.A. Sec. 203.

A la par, una vez la reclamación de beneficios del empleado ha sido examinada y el Director o el Administrador del plan privado ha determinado que el reclamante es elegible a los beneficios solicitados, el trabajador no sólo será favorecido con el pago de las sumas monetarias provistas por ley, sino que

> el patrono [también] vendrá obligado a reservar el empleo que desempeña el trabajador al momento de comenzar la incapacidad y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:
> (1) Que el trabajador requiera al patrono que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que fuere dado de alta, y siempre y cuando que [sic] dicho requerimiento no se haga después de transcurridos [sic] un (1) año desde la fecha de comienzo de la incapacidad;
> (2) que el trabajador esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono dicha reposición, y
> (3) que dicho empleo subsista al momento en que el trabajador solicite su reposición. Se entenderá que el empleo subsiste cuando el mismo esté vacante o lo ocupe otro trabajador. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro trabajador dentro de los treinta (30) días siguientes a la fecha en que se hizo el requerimiento de reposición.
> Si el patrono no cumpliera con las disposiciones de este inciso, vendrá obligado a pagar al trabajador o a sus beneficiarios los salarios que dicho trabajador hubiere devengado de haber sido reinstalado; además le responderá de todos los daños y perjuicios que le haya ocasionado. El trabajador o sus beneficiarios podrán instar y tramitar la correspondiente reclamación de reinstalación y/o daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secs. 3118 a 3132 del Título 32 [de las Leyes de Puerto Rico Anotadas]. 11 L.P.R.A. Sec. 203(q).

De tal manera, se materializa la intención del legislador de que la protección que reciba el trabajador mediante esta legislación, no sea una meramente económica, sino una que proteja esencialmente la tenencia de su empleo. Delgado Zayas, *op. cit.*, pág. 233.

Finalmente, la Ley Núm. 139, *supra*, debe ser "liberalmente interpretada para cumplir su propósito de indemnizar a los trabajadores por la pérdida de salarios resultante de [una] incapacidad [no-ocupacional]". 11 L.P.R.A. sec. 201. No obstante, ya hemos dispuesto en el pasado que, aunque la Ley Núm. 139, *supra*, exige liberalidad en su interpretación, "cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Rojas v. Méndez Co., Inc., 115 D.P.R. 50, 53 (1984).

*C. La Ley de Acción por Represalia del Patrono.*

Mediante la promulgación de la Ley Núm. 115, *supra*, la Asamblea Legislativa procuró establecer, como política pública del gobierno de Puerto Rico, "la protección de los empleos de los trabajadores, tanto de las instrumentalidades del Estado Libre Asociado como del sector privado, *cuando comparecen ante la Legislatura o alguna de sus comisiones*, y ante foros *administrativos* y *judiciales* para colaborar con dichos foros". (Énfasis nuestro.) Exposición de Motivos, Ley Núm. 115, *supra*, 1991 Leyes de Puerto Rico pág. 957. Véase, también, Ocasio v. Kelly Servs., 163 D.P.R. 653, 684 (2005).

Consecuentemente, el Art. 2 del estatuto mencionado dispone que

> [n]ingún patrono podrá despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información *ante un foro legislativo, administrativo o judicial en Puerto Rico*, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. (Énfasis nuestro.) 29 L.P.R.A. sec. 194a(a).

Si un patrono incurre en la conducta proscrita por el transcrito articulado, el empleado

> podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió [la] violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar,... y [el cobro de] honorarios de abogado. Íd, sec. 194a (b). Véase, también, <u>Cintrón v. Ritz Carlton</u>, 162 D.P.R. 32, 37 (2004).[30]

Una vez la acción civil sea instada por el empleado contra el patrono, la propia Ley Núm. 115, *supra*, prescribe el proceso probatorio que aplicará en la dilucidación de la controversia. Así, el Art. 2 de la ley bajo examen dispone lo siguiente:

> El empleado deberá probar la violación mediante evidencia directa o circunstancial. El empleado

---

[30] En <u>Cintrón v. Ritz Carlton</u>, 162 D.P.R. 32 (2004), dispusimos que la Ley Núm. 115, *supra*, limita su alcance a aquellas represalias que se originen por causa del empleado haber acudido ante foros gubernamentales. Distinto a lo provisto por el Art. 2(a) de la Ley 115, *supra*, (29 L.P.R.A. sec. 194(a)), resolvimos que el Art. 20 de la Ley Núm. 69, de 6 de julio de 1985, le ofrece protección al obrero contra represalias de su patrono, *indistintamente del foro donde acuda a querellarse o presente información contra éste*. Por tal razón, el patrono responde si toma represalias contra el empleado por éste haber formulado una queja verbal o por haber utilizado los procedimientos internos de la empresa para oponerse a una práctica patronal ilícita al amparo de la Ley Núm. 69, *supra*.

podrá, además, establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por la [Ley Núm. 115, *supra*,] y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo. Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido. 29 L.P.R.A. sec. 194a(c).

En el pasado hemos pautado que, "[p]ara tener una causa de acción bajo la referida disposición estatutaria, el empleado tendrá que probar lo siguiente: (1) que participó en una de las actividades protegidas por la ley, y (2) que subsiguientemente fue despedido, amenazado o sufrió discrimen en el empleo". Ocasio v. Kelly Servs., supra, pág. 684. Ampliando lo anterior, en Marín v. Fastening Systems, Inc., *infra*, establecimos que

> con relación a este tipo de caso laboral el legislador entendió necesario, al balancear los intereses del patrono y del obrero, recalcar y enfatizar, que para tener derecho al remedio que concede la Ley Núm. 115, *supra*, el obrero querellante tiene que probar la violación a las disposiciones de la Ley, mediante evidencia directa o circunstancial. Para facilitar el *onus probandi* que le impuso al obrero, dispuso que éste establecería un caso prima facie cuando presentase evidencia, directa o circunstancial, que probase: Primero, que participó en una de las actividades protegidas por la Ley; y segundo, que subsiguientemente fue despedido o amenazado o sufrió discrimen en el empleo. *La Ley crea una presunción juris tantum de violación a la misma a favor del querellante, al disponer que éste establece un caso prima facie una vez prueba que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado en su contra en el empleo.* Una vez el querellante establece de forma prima facie su caso, el patrono deberá alegar y fundamentar que tuvo una razón legítima y no discriminatoria para el despido. Ante esto,

el empleado, aún puede prevalecer si prueba que la razón alegada por el patrono es un simple pretexto para el despido discriminatorio. (Énfasis nuestro.) Marín v. Fastening Systems, Inc., 142 D.P.R. 499, 511 (1997).

Con relación al primer criterio que todo empleado debe establecer para probar un caso prima facie por represalias al amparo de la Ley Núm. 115, *supra* -que participó en una de las *actividades protegidas* por la Ley- hemos determinado que el legislador no tuvo la intención de limitar el alcance de las protecciones ofrecidas por el citado estatuto únicamente a expresiones realizadas en procesos investigativos. Irizarry v. J & J Cons. Prods. Co., Inc., 150 D.P.R. 155, 164 (2000). Fundamentándonos en un estudio minucioso del historial legislativo de la disposición legal bajo examen, esta Curia resolvió en Irizarry v. J & J Cons. Prods. Co., Inc., supra, que nuestra ley general de represalias amplió la protección del empleado contra represalias de su patrono por ofrecer cualquier testimonio o información en cualquier foro bajo cualquier procedimiento.[31] Íd., pág. 168. A esos efectos, dispusimos en el caso de referencia que, cuando una empleada acude al Fondo del Seguro del Estado -un foro administrativo- para acogerse a los beneficio de la Ley Núm. 45 de 18 de abril de 1935, según enmendada, *dicho*

---

[31] A su vez, resolvimos que la protección que brinda la Ley Núm. 115, *supra*, a los trabajadores en sus empleos no puede quedar "supeditada al simple hecho de si es el ente del gobierno el que inicia el procedimiento investigativo en el cual se vierte la información o testimonio por parte del empleado, o si es el empleado el que voluntariamente asiste a la entidad a brindar cierta información y como resultado de ello comienza la investigación". Irizarry v. J & J Cons. Prods. Co., Inc., 150 D.P.R. 155, 170 (2000).

*acto constituye una actividad protegida* por la Ley Núm. 115, *supra*. Íd., pág. 170.

Por último, el segundo requisito establecido por nuestro estatuto exige que el empleado haya sido despedido, amenazado o discriminado en el empleo, *subsiguiente* a su incursión en la actividad protegida. Al momento de brindar contenido al requerimiento esbozado, surge como persuasivo el desarrollo jurisprudencial de su homóloga federal, la sección 704(a) del Título VII de la Carta de Derechos de 1964, *infra*. Veamos.

Como apuntalamos en <u>Santiago Rivera v. A.A.A.</u>, 2009 T.S.P.R. 162, 177 D.P.R. ___ (2009),[32] nuestra ley general de represalias tiene congruencias con la sección 704(a) del Título VII de la Carta de Derechos de 1964 (42 U.S.C. sec. 2000e-3(a)), estatuto federal diseñado para atender determinadas represalias del patrono contra el empleado. Íd., pág. 28. Al amparo del Título VII, *supra*, un empleado que reclame una causa de acción por represalias puede establecer su caso mediante prueba directa o

---

[32] Luego de reiterar que las *actividades protegidas* por el citado estatuto son aquellas en donde el empleado ofrece información verbal o escrita a un *foro judicial, administrativo o legislativo*, dispusimos que un trabajador que ofrecía información a funcionarios de la *Environmental Protection Agency* (EPA) y a un monitor de la Corte de Distrito Federal de Puerto Rico (Corte), concerniente a ciertos desvíos y desbordes ocurridos por la operación inefectiva de la Autoridad de Acueductos y Alcantarillados (Autoridad) de sus plantas de tratamiento, había incurrido en una *actividad protegida* por la Ley Núm. 115, *supra*. Íd., págs. 31-35. Aunque las declaraciones del empleado se efectuaban en el curso de sus funciones como *Cotejador de Sistemas de Bombeo de los Alcantarillados* (puesto creado por una orden de la Corte que procuraba impedir que la Autoridad continuara violando la *Federal Water Pollution Control Act*, 33 U.S.C. sec. 1251, *et seq.*), las mismas eran ofrecidas a un foro administrativo -la EPA- y a un foro judicial -la Corte de Distrito Federal de Puerto Rico-, los cuales estaban cobijados por la disposición legal bajo examen.

indirecta. <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 99 (2003); <u>U.S. Postal Service Bd. of Governors v. Aikens</u>, 460 U.S. 711, 714 n.3 (1983).

Cuando el trabajador opte por la vía indirecta, éste deberá establecer, por preponderancia de la prueba, un caso prima facie de represalia.[33] Un litigante establece un caso prima facie de represalias al amparo del Título VII, *supra*, si alega que: (1) incurrió en una actividad o conducta protegida por ley; (2) sufrió una acción disciplinaria adversa por parte del patrono; y (3) que *existe un nexo causal entre la conducta protegida y la acción disciplinaria o adversa del patrono.*[34] (Énfasis nuestro.) <u>Santiago Rivera v. A.A.A.</u>, supra, pág. 29.

---

[33] "Without direct evidence of a retaliatory motive, we analyze retaliation claims (whether under Title VII, the ADA, or the ADEA), under the burden-shifting framework of <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this framework, the initial burden is on the plaintiff to establish a prima facie case, consisting of evidence: '(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events.' <u>Green</u>, 459 F.3d at 914. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a 'non retaliatory reason for the adverse employment action' Id. (quotation marks omitted). If the defendant can show a legitimate, non-retaliatory reason for its actions, the burden returns to the plaintiff who 'is then obliged to present evidence that (1) creates a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation.' <u>Logan v. Liberty Healthcare Corp.</u>, 416 F.3d 877, 880 (8th Cir. 2005) (quoting <u>Smith v. Allen Health Sys., Inc.</u>, 302 F.3d 827, 833 (8th Cir. 2002))." <u>Stewart v. Indep. Sch. Dist. No. 196</u>, 481 F.3d 1034, 1042-1043 (2007).

[34] La Sec. 704 del Título VII federal dispone lo siguiente:
**(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.**
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership,

Al elaborar sobre la exigencia de que exista un nexo causal entre la actividad protegida realizada por el empleado y la acción adversa efectuada por el patrono, una mayoría de los circuitos de la corte de apelación federal han requerido que el trabajador demuestre la existencia de suficiente *proximidad temporal* entre ambos eventos.[35] No obstante, reseñamos que los circuitos se encuentran escindidos al momento de resolver si el elemento de proximidad temporal resulta suficiente por sí solo para establecer la existencia del indicado nexo causal.[36]

Por un lado, la corte de apelación federal del primer, segundo, cuarto, noveno, décimo y undécimo circuito conciben que dicho factor, exclusivamente, satisface el tercer requisito de un caso prima facie exigido por los pronunciamientos jurisprudenciales que interpretan el Título VII, *supra*.[37] Como bien fue señalado

---

because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. sec. 2000e-3.

[35] R. A. Bales & T. B. Daniels, Plus at Pretext: Resolving the Split Regarding the Sufficiency of Temporal Proximity Evidence in Title VII Retaliation Cases, 44 Gonz. L. Rev. 493, 494-495 (2008-2009).

[36] Íd., pág. 494.

[37] R. A. Bales & T. B. Daniels, *supra*, págs. 494-495. Véanse, también: Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 224 (1er Cir. 2008); Moron-Barradas v. Dep't of Educ., 488 F.3d 472, 481 (1er Cir. 2007); Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1er Cir. 2006); Calero-Cerezo v. United States DOJ, 355 F.3d 6, 26 (1er Cir. 2004) ("a showing of discharge soon after the employee engages in an activity specifically protected by . . . Title VII . . . is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation.... We have noted that the prima facie burden in this context is not an onerous one."); Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2do Cir. 2010) ("Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be

por la Corte Suprema federal, estos circuitos sólo requerirán que la proximidad temporal entre la actividad protegida y la acción adversa *sea una muy cercana*.[38] Específicamente, se ha interpretado que una acción adversa tomada en contra de un empleado inmediatamente después de éste incurrir en una actividad protegida, constituye prueba indirecta suficiente de la existencia de un nexo causal entre ambos acontecimientos.[39] A su vez, la mayoría de los circuitos previamente nombrados conciben que un espacio de cuatro meses entre ambos eventos no constituye suficiente evidencia indirecta para cumplir con el requisito de causalidad.[40]

Por otra parte, la corte de apelación federal para el tercer, quinto, séptimo y octavo circuito requieren que la proximidad temporal sea analizada en conjunto con otros factores.[41] Así, éstos últimos circuitos ponderarán,

---

sufficient to establish the requisite causal connection between a protected activity and retaliatory action"); Treglia v. Town of Manlius, 313 F.3d 713, 720 (2do Cir. 2002); Price v. Thompson, 380 F.3d 209, 213 (4to Cir. 2004); Carter v. Ball, 33 F.3d 450, 460 (4to Cir. 1994); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9no Cir. 2002); Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 507 (9no Cir. 2000); Annett v. Univ. of Kan., 371 F.3d 1233, 1239-40 (10mo Cir. 2004).

[38] Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

[39] Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6to Cir. 2008).

[40] Íd., citando a, Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7mo Cir. 1992). Véase, también, Calero-Cerezo v. United States DOJ, supra.

[41] R. A. Bales & T. B. Daniels, *supra*, págs. 494-495. Véanse, también: Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3er Cir. 2007); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-284 (3er Cir. 2000); Swanson v. Gen. Serv. Admin., 110 F.3d 1180, 1188 n.3 (5to Cir. 1997); Daugherty v. Wabash Ctr., Inc., 577 F.3d 747, 751-752 (7mo Cir. 2009); Tomanovich v. City of Indianapolis, 457 F.3d 656, 665 (7mo Cir. 2006); Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 986-987 (8vo

además del elemento de la proximidad temporal, otros elementos, a saber: (1) si el empleado fue tratado de forma distinta que otros empleados; (2) si existió un patrón de conducta antagonista en contra del empleado; (3) si las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de inconsistencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal.[42]

Sin embargo, encontramos que la división de criterios entre los circuitos de la corte de apelación federal no representa un abismo irreconciliable. Esencialmente, la suficiencia del factor de la proximidad temporal, como prueba exclusiva de causalidad, dependerá, en gran medida, de cuán cerca en el tiempo están la actividad protegida ejercida por el empleado y la acción adversa efectuada por el patrono.[43]

Si la acción adversa del patrono es realizada inmediatamente después del empleado informarle que ha incursionado en una actividad protegida, se entiende que el elemento de proximidad temporal bastará para establecer el requisito de la existencia de un nexo causal.[44] Por el contrario, cuando el periodo de tiempo entre el ejercicio de la actividad protegida y la subsiguiente acción adversa

---

Cir. 2011); Peterson v. Scott County, 406 F.3d 515, 524 (8vo Cir. 2005).

[42] Véase Farrell v. Planters Lifesavers Co., supra, págs. 280-281.

[43] Tyler v. Univ. of Ark. Bd. of Trs., supra, págs. 986-987.

[44] Íd.

del patrono aumenta, el criterio de la proximidad temporal resultará menos útil para comprobar, en el establecimiento de un caso prima facie, que existe un nexo causal entre ambos eventos.[45]

Luego de examinar el Art. 2 de la Ley Núm. 115, *supra*, encontramos que dicho estatuto, al exigirle al empleado que pruebe que fue despedido, amenazado o discriminado en el empleo, *subsiguiente* a su incursión en la actividad protegida, parece establecer que la proximidad temporal resulta suficiente al momento de establecer un caso prima facie por represalias al amparo de nuestro ordenamiento legal. Lo anterior se desprende fácilmente del significado de la palabra *subsiguiente*, la cual denota un acto "[q]ue sigue *inmediatamente* a aquello que se expresa o sobreentiende".[46] De tal manera, el legislador pretendió que, al establecer su caso prima facie, el empleado no se enfrentara a un proceso probatorio oneroso, sino que bastara su comprobación de que la acción adversa que experimentó ocurrió *al poco tiempo* de haber incurrido en la alegada actividad protegida.

Sin embargo, no todo caso se configura dentro de un espacio temporal que pueda catalogarse como de *poco tiempo*. Ante tales circunstancias, la proximidad

---

[45] Farrell v. Planters Lifesavers Co., supra, pág. 284.

[46] Real Academia Española, Diccionario de la Lengua Española, 22da ed., Ed. Espasa, 2001, pág. 2101.

temporal, como inferencia de causalidad, resulta insuficiente, requiriéndose entonces que el empleado constate elementos adicionales que comprueben la existencia de un nexo causal entre la actividad protegida y la acción disciplinaria adversa. Así, el trabajador deberá presentar evidencia que establezca (1) que fue tratado de forma distinta a otros empleados; (2) que existió un patrón de conducta antagonista en su contra; (3) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de inconsistencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. Lo anterior implica, necesariamente, un acercamiento caso a caso.

Claro está, hacemos la salvedad de que el análisis previamente esbozado sólo satisface al momento del empleado establecer un caso prima facie por represalias. Ello, pues, una vez el patrono logre articular una razón no represiva para la acción adversa que tomó, se requerirá del empleado que, por preponderancia de la prueba, se valga de factores adicionales a la proximidad temporal para comprobar que las razones articuladas por el patrono no son más que meros pretextos destinados a ocultar el verdadero ánimo represivo. Habiendo examinado el Derecho aplicable a los hechos del caso ante nos, pasemos a resolver las controversias inicialmente esbozadas.

III

En el caso que nos ocupa el señor Feliciano Martes arguye que el Tribunal de Apelaciones erró al desestimar sus causas de acción al amparo de la Ley Núm. 80, *supra*, la Ley Núm. 139, *supra*, y la Ley Núm. 115, *supra*. No le asiste la razón.

A.    *El despido del señor Feliciano Martes estuvo justificado a la luz de la Ley Núm. 80, supra, y su jurisprudencia interpretativa.*

Según alega el peticionario, su despido fue injustificado ya que, a la fecha de su destitución, no existía una norma en el Manual de Asociados que obligara al señor Feliciano Martes a excusarse diariamente con su supervisor cada vez que se aprestaba a faltar a un turno de trabajo por razón de enfermedad.[47] De acuerdo al peticionario, su llamada el 27 de mayo de 2006 notificando a su supervisor que se encontraba enfermo, bastó para justificar sus siete ausencias consecutivas al empleo. Sus planteamientos carecen de mérito.

Como bien indicamos en nuestra exposición del Derecho, la violación a las reglas y reglamentos de una empresa podría ser motivo justificado para el despido de un trabajador, siempre y cuando: (1) la violación a los reglamentos sea reiterada; (2) las reglas y los reglamentos sean razonables; (3) se suministre oportunamente copia escrita de los mismos al trabajador; y (4) el despido del empleado no se haga por mero capricho

---

[47] Alegato de la parte peticionaria, págs. 8-10.

del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. Al examinar el expediente en el caso de marras, encontramos que están presentes todos los factores antes reseñados. Abundemos.

En primer lugar, la violación del reglamento del Hotel por parte del peticionario -en específico la política de asistencia y ausentismos de la empresa- fue una *reiterada*. Distinto a lo alegado por el señor Feliciano Martes, el Manual de Asociados -analizado en su integridad- sí contiene normas que obligan al peticionario a excusarse diariamente con su supervisor cada vez que se aprestaba a faltar a su turno de trabajo. Así, el reglamento del Hotel dispone que, si un empleado va a ausentarse a su jornada de empleo, necesita notificarlo al jefe de su departamento *por lo menos dos horas antes* de la hora en que debe reportarse a trabajar.[48] Si el empleado no logra comunicarse con su supervisor directo para notificar su ausencia, deberá llamar nuevamente hasta que logre comunicarse con éste, o con un gerente y/o jefe de departamento.[49]

En el caso de autos, el señor Feliciano Martes falló en cumplir con la norma reseñada en siete ocasiones, específicamente los días 28, 29, 30, y 31 de mayo del 2006, al igual que el 1, 4 y 5 de junio del mismo año, ya

---

[48] Manual de Asociados, Acápite 5-f-ii, Apéndice, Petición de *certiorari*, pág. 135.

[49] Manual de Asociados, Acápite 5-f-iv, Apéndice, Petición de *certiorari*, pág. 136.

que nunca llamó a su patrono para excusarse por estar enfermo.[50] Era la responsabilidad del peticionario haberse comunicado con su supervisor dos horas antes de la hora de entrada, por cada día de ausencia al empleo. Aún dando por cierto su testimonio en corte de que logró comunicarse con su supervisor el 28 de mayo de 2006, dicha comunicación sólo bastó para excusar al peticionario por uno de los siete días de trabajo faltados. Al no existir evidencia en el récord que apunte a que el señor Feliciano Marte haya cumplido con la norma indicada por el remanente de los días faltados, resulta forzoso concluir que su violación a dicha regla fue reiterada y no una falta aislada.

Así mismo, el reglamento dispone que *la falta del empleado de reportarse al trabajo o de llamar para notificar su ausencia por tres días de trabajo*

---

[50] Al analizar la prueba desfilada en el juicio, el Tribunal de Primera Instancia determinó que el 27 de mayo de 2006 el peticionario logró comunicarse con su supervisor inmediato, el señor Santiago Santos, con el fin de ausentarse por enfermedad a su turno de empleo pautado para el 28 de mayo de 2006. Igualmente, el foro primario entendió que, al comunicarle a sus coempleados Ángel Cedeño y José Ríos que se encontraba enfermo, el señor Feliciano Martes cumplió con avisarle a la empresa sobre sus ausencias para el restante de los turnos de trabajo antes indicados. No obstante, dichas conversaciones no fueron originadas por el señor Feliciano Martes y mucho menos fueron dirigidas al personal gerencial de la empresa, según lo requiere el manual. Apoyándose en lo anterior, e interpretado de forma aislada el reglamento del patrono, el juzgador de hechos concluyó que el manual de asociados no exigía al peticionario llamar dos horas antes de cada turno para notificar su ausencia por enfermedad, y determinó que, al despedírsele por abandono de trabajo, la destitución del señor Feliciano Martes fue injustificada. Incidió en error.

Aún otorgándole deferencia a las determinaciones de hechos efectuadas por el Tribunal de Primera Instancia -entiéndase, que el peticionario se comunicó con su supervisor el 27 de mayo de 2006- entendemos que el señor Feliciano Martes falló en notificar su ausencia en seis ocasiones con su supervisor directo, un gerente o algún jefe de departamento, según exigido por el manual de empleados. Esta cantidad de ausencias, a todas luces, representa una diáfana violación reiterada de la política de asistencia de la empresa.

*consecutivos* es considerado por las normas de la empresa como un abandono del servicio y constituye base para el despido inmediato.[51]  Si consideramos las siete ausencias contiguas del señor Feliciano Martes en las fechas antes indicadas, encontramos que el peticionario violentó esta norma en dos ocasiones, una por cada tres días de ausentismo sin notificación.

Más aún, el Manual dispone de forma notoria que las ausencias excesivas y no autorizadas están absolutamente prohibidas y pueden ser motivo de despido.  El incumplimiento del peticionario con la política de asistencia de la empresa al faltar consecutivamente según reseñado, sin tan siquiera comunicarse con su supervisor directo o algún gerente o jefe de departamento del Hotel para informar que se encontraba enfermo, representó una clara violación *reiterada* de las normas indicadas, cuya consecuencia -según provee el Manual de Asociados- acarreaba el despido.

En segundo lugar, luego de examinar el reglamento del Hotel, encontramos que el mismo es uno razonable en su naturaleza.  Como bien indica el Departamento del Trabajo y Recursos Humanos en sus Guías Interpretativas de la Ley Núm. 80, *supra*,

> [l]a razonabilidad [de un reglamento] es un concepto muy subjetivo y sutil.  Lo que resulta razonable en un establecimiento no tiene necesariamente que serlo en otro establecimiento.  Consecuentemente una regla

---

[51]  Manual de Asociados, Acápite 5-f-iv, Apéndice, Petición de *certiorari*, pág. 136.

puede ser razonablemente aplicada en determinadas circunstancias e irrazonablemente en otras circunstancias, aun cuando los hechos a que se aplique sean los mismos *prima facie*. Dept. del Trabajo y Recursos Humanos, *supra*, pág. 36.

De lo enunciado se desprende que el análisis de un reglamento, en cuanto a su razonabilidad, exige un examen que se ajuste a las particularidades de cada caso, tomando en cuenta las circunstancias propias de cada establecimiento. Así, luego de examinar las normas del Manual de Asociados del Hotel que establecen que tres ausencias consecutivas al empleo sin notificación representan un abandono del empleo, y que todo empleado debe notificar su ausencia con al menos dos horas de anticipación a su hora de entrada, sujeto a ser despedido si incumple con dicha política, encontramos que las mismas son razonables dentro del contexto específico de una empresa hotelera dedicada al servicio de huéspedes y turistas.

Como bien dispone el Manual, la habilidad del Hotel para atender satisfactoriamente las necesidades de sus comensales depende de la asistencia regular del personal adiestrado a sus turnos de trabajo.[52] Cuando un trabajador falla en notificar que se ausentará del empleo por razón de enfermedad durante siete turnos de empleo consecutivos, se afecta adversamente el normal y buen funcionamiento de la empresa –cuarto factor a considerar cuando un empleado

---

[52] Manual de Asociados, Acápite, 5-f, Apéndice, Petición de *certiorari*, pág. 135.

es despedido por violar las reglas y reglamentos de la empresa- ya que los servicios provistos por el Hotel no podrán ejecutarse efectivamente.

Distinto a otras faltas y problemas de conducta en el Manual -los cuales son atendidos mediante un proceso de disciplina progresiva- la ausencia excesiva y sin notificación constituye un serio problema que deja al Hotel desprovisto de los recursos humanos necesarios para cumplir su misión de proveer servicio a sus clientes. Por consiguiente, no es irrazonable penalizar la violación reiterada de dicha norma con el despido, si el empleado insiste en incurrir en una conducta cuyo efecto primordial es afectar la esencia de las funciones hoteleras, esto es, atender adecuadamente a los huéspedes y turistas.

En tercer lugar, el Hotel suministró oportunamente copia escrita del reglamento al trabajador. Así lo reconoció el propio peticionario en su testimonio en corte.[53] Más aún, el señor Feliciano Martes aceptó haber recibido orientaciones y adiestramientos sobre la política de asistencia, ausencias y notificaciones de la empresa, según es la práctica del Hotel conferirlas cuando un empleado nuevo es contratado.[54]

Por todo lo anterior, concluimos que el patrono estuvo justificado en despedir al señor Feliciano Martes

---

[53] Transcripción de la Prueba, pág. 32 y 66-67, Apéndice, Petición de *certiorari*, pág. 242 y 276-277.

[54] Transcripción de la Prueba, págs. 65-66, Apéndice, Petición de certiorari, págs. 275-276.

luego que éste violentara reiteradamente las normas de asistencia impuestas por el Manual de Asociados. Dicha actuación no fue ejercida por mero capricho, sino que respondió al criterio del buen y normal funcionamiento de la empresa. Igualmente, aunque la Ley Núm. 80, *supra*, establece una presunción de despido injustificado en contra del patrono, éste la rebatió satisfactoriamente al justificar en la afirmativa su actuación, demostrando en el juicio que el despido obedeció al reiterado ausentismo del señor Feliciano Martes.

*B. El peticionario no era acreedor al beneficio de reserva de empleo provisto por la Ley Núm. 139, supra.*

Como segunda causa de acción, el peticionario argumenta que el patrono violó la Sec. 3 de la Ley Núm. 139, *supra*, al despedirlo y no reservarle el empleo durante el periodo en el cual se ausentó de sus turnos de trabajo por supuesta enfermedad.[55] No le asiste la razón.

Según esbozamos en nuestra discusión del Derecho, la Sec. 3 de la Ley Núm. 139, *supra*, exige que todo patrono le reserve el empleo a un obrero incapacitado por una enfermedad o lesión no relacionada al trabajo, siempre y cuando éste cumpla con las condiciones impuestas en el inciso (q). No obstante, la concesión de la protección indicada al amparo de SINOT no es automática. Para que un obrero pueda gozar del beneficio de la reserva de su empleo por parte del patrono, dicho empleado debe haber presentado una reclamación de beneficios por incapacidad

---

[55] Entiéndase, mayo 28 de 2006 hasta el 5 de junio del año indicado.

al amparo de la Ley Núm. 139, *supra*. Como bien resaltamos anteriormente, dicha solicitud debe estar acompañada de un informe del patrono y un certificado médico. Una vez la solicitud es presentada ante el Administrador del plan privado correspondiente o el Director del Negociado, éstos deberán hacer una determinación de elegibilidad a los beneficios de SINOT, según las circunstancias particulares del empleado-reclamante y a la luz de los estándares provistos por el estatuto bajo examen.

Como resultado, el goce por un empleado de los beneficios provistos por la Ley Núm. 139, *supra*, está inexorablemente ceñido a que el empleado haya, en efecto, radicado una solicitud de beneficios por incapacidad no ocupacional al amparo de SINOT y que la misma haya sido aprobada por el Departamento del Trabajo y Recursos Humanos –de ser un plan público– o el Administrador del plan correspondiente –de ser un plan privado–.

Luego de examinar el expediente del caso de autos, encontramos que el peticionario nunca sometió una reclamación de beneficios al amparo de la Ley Núm. 139, *supra*, *antes de la fecha de su despido*. Por tal motivo, al momento de su destitución el 8 de junio de 2006, el empleado aún no era acreedor al beneficio de reserva de empleo provisto por SINOT. Veamos.

Según consta en el récord ante nos, el peticionario suplementó su recurso de *certiorari* ante esta Curia con un documento intitulado *Solicitud de Beneficios por*

*Incapacidad-SINOT-Ley 139*, provisto por la compañía aseguradora MAPFRE.[56] Dicho documento fue completado por el reclamante –el señor Feliciano Martes– quién llenó la sección del formulario denominada *Informe del Reclamante*. Igualmente, la Dra. María San Antonio, quien diagnosticó al reclamante con la incapacidad no ocupacional, completó la sección II del documento, intitulada *Certificado Médico*. No obstante, la sección III del formulario (el *Informe del Patrono*), la cual es requisito para que una solicitud de beneficios al amparo de la Ley Núm. 139, *supra*, sea considerada perfeccionada, según lo establece el Reglamento Núm. 3052, *supra*, no fue completada por el empleador. A la luz de lo anterior, y por faltar en el expediente documentación adicional relacionada a la reclamación de beneficios, resulta forzoso concluir que el peticionario nunca sometió una solicitud de beneficios al amparo de la Ley Núm. 139, *supra*, debidamente cumplimentada, según lo exige el inciso (k) de la Sec. 3 del citado estatuto, y la Secs. 3.5 y 3.6(a) del Reglamento Núm. 3052, *supra.*

Incluso, aún dando por cierto –para fines argumentativos– que el peticionario presentó una solicitud debidamente perfeccionada ante el Administrador Privado del plan de SINOT adoptado por el patrono, nos vemos precisados a concluir que la misma no fue sometida *antes de la fecha de su despido*. Al examinar la solicitud que el señor Feliciano Martes adjuntó en su apéndice,

---

[56] Véase, Apéndice, Petición de *certiorari*, págs. 151-153.

encontramos que la sección II -correspondiente al certificado médico- fue llenada por la doctora San Antonio el 14 de junio de 2006, siete días después de ocurrir la destitución del peticionario. Lo anterior constata ostensiblemente, que al 8 de junio de 2006 -fecha del despido del señor Feliciano Martes-, la reclamación de beneficios de SINOT del peticionario aún no había sido sometida ante la compañía de seguros que administraba el plan privado del Hotel. Como resultado, al momento de su destitución, el peticionario no contaba con una determinación del Administrador Privado que lo hiciere acreedor de las protecciones y los beneficios provistos por la Ley Núm. 139, *supra*, incluyendo la reserva de empleo.

En atención a ello, resolvemos que el patrono no venía obligado a reservarle el empleo al señor Feliciano Martes, ya que, a la fecha de su despido, éste aún no había sometido una reclamación debidamente cumplimentada al amparo de SINOT.

*C. El peticionario no estableció un caso prima facie por represalias al amparo de la Ley Núm. 115, supra.*

Finalmente, el señor Feliciano Martes alega que su despido respondió a su comunicación al patrono de que se aprestaba a someter ante el Administrador del plan privado de SINOT, una solicitud de beneficios según provistos por la Ley Núm. 139, *supra*. Consecuentemente, el señor Feliciano Martes arguye que el acto de acudir al SINOT

constituye una actividad protegida por la Ley Núm. 115, *supra*, y que, como tal, está legitimado a los remedios provistos por la referida disposición legal. Veamos los fundamentos por los cuales no le asiste la razón.

Al analizar el alcance y las protecciones instauradas por la Ley Núm. 115, *supra*, establecimos que, para tener una causa de acción bajo el referido estatuto, el empleado debe probar las violaciones a la ley mediante evidencia directa o circunstancial. De optar por la vía circunstancial, el obrero deberá establecer un caso prima facie de represalias contra su patrono ofreciendo prueba sobre los siguientes factores: (1) que participó en una de las actividades protegidas por ley, y (2) que subsiguientemente fue despedido o sufrió una acción adversa en el empleo.

Con relación al primero de estos criterios, encontramos que esta Curia nunca se ha expresado en cuanto a si el acto de someter una solicitud de beneficios al amparo de SINOT representa o no una actividad protegida por la Ley Núm. 115, *supra*. Luego de examinar la naturaleza cuasi-administrativa de SINOT, entendemos razonable establecer que la reclamación de beneficios al amparo de la Ley Núm. 139, *supra*, constituye una actividad protegida por nuestra ley general de represalias. Lo anterior se fundamenta en que, aunque un patrono puede acogerse a un plan privado de SINOT administrado por una compañía aseguradora o por sí mismo, dicho plan siempre

deberá pasar el escrutinio y recibir la aprobación del Secretario del Departamento del Trabajo y Recursos Humanos.   Más aún, cuando un reclamante recibe una notificación adversa del Administrador del plan privado, toda reconsideración de dicha determinación adversa, al igual que la posibilidad de apelar la decisión tomada en reconsideración, debe tramitarse ante el Departamento del Trabajo y Recursos Humanos -un foro administrativo cubierto por la ley bajo examen-.  Además, el reclamante siempre tendrá la oportunidad de acudir oportunamente ante el Tribunal de Apelaciones si le interesa revisar judicialmente el dictamen final de la agencia.

Por causa de la naturaleza cuasi-administrativa del proceso de reclamación de beneficios de SINOT, y debido a que en Irizarry v. J & J Cons. Prods. Co., Inc., supra, determinamos que cuando un empleado acude al Fondo del Seguro del Estado -un seguro público semejante en naturaleza al fondo provisto por la Ley Núm. 139, supra- dicha actuación es considerada como una actividad protegida por ley, igualmente resolvemos hoy que el acto de someter una reclamación de beneficios al amparo de la Ley Núm. 139, supra, constituye una actividad protegida por la Ley Núm. 115, supra.

Cumpliéndose el primer factor para un caso prima facie por represalias, entendemos que, en el caso ante nos, el peticionario también estableció el segundo criterio antes articulado.  Esto debido a que sufrió una

acción adversa por parte de su patrono —entiéndase, el despido— *poco tiempo* después de haber incurrido en una actividad protegida por la Ley Núm. 115, *supra*. Así, concluimos que, para los únicos fines del establecimiento de un caso prima facie por represalias, un despido efectuado apenas 4 días después de un empleado informar que se aprestaba a presentar una solicitud para beneficios al amparo de la ley Núm. 139, *supra*, constituye suficiente *proximidad temporal* para inferir que existe un nexo causal entre ambos eventos.

A la luz de lo esbozado, entendemos que el peticionario estableció un caso prima facie por represalias que activó la presunción *juris tantum* de violación de la Ley Núm. 115, *supra*, en contra del patrono. Sin embargo, el patrono logró rebatirla satisfactoriamente al articular una razón justificada para el despido del señor Feliciano Martes; a saber, su ausentismo reiterado y su abandono del trabajo, según dicha política institucional es planteada en el Manual del Hotel. Luego de examinar el expediente, no encontramos evidencia alguna presentada por el empleado que establezca que la razón para el despido articulada por el patrono constituya un mero pretexto para la destitución. En vista de los antecedentes fácticos, procede confirmar el dictamen del foro recurrido.

IV.

Por los fundamentos antes enunciados, *confirmamos la Sentencia emitida por el Tribunal de Apelaciones, en la cual desestimó todas las causas de acción incoadas por el peticionario.*

Se dictará Sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

                                              Certiorari

José A. Feliciano Martes
        Peticionario

              v.              CC-2009-1020

   Sheraton Old San Juan
        Recurrido

SENTENCIA


San Juan, Puerto Rico, a 29 de junio de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia dictada por el Tribunal de Apelaciones en el caso de autos.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo