Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| LYRIAM AIRIM MOJICA VARGAS<br><br>Apelante<br><br>v.<br><br>CABRERA AUTO GROUP, INC. Y OTROS<br><br>Apelados | KLAN202400491 | Apelación procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Sobre:<br>Despido Injustificado, Ley 80-1976; Represalias, Ley 115-1991 y Discrimen por edad y género, Ley 100-1959; Procedimiento Sumario, Ley Núm. 2, 32 LPRA § 3118 *et seq.*<br><br>Caso Núm.: AR2022CV00989 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de agosto de 2024.

La parte apelante, Lyriam Airim Mojica Vargas, comparece ante nos solicitando que dejemos sin efecto la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Arecibo, el 6 de mayo de 2024, notificada el 7 de mayo de 2024. Mediante la misma, el foro *a quo* declaró *Ha Lugar* una *Solicitud de Sentencia Sumaria* promovida por los apelados, Cabrera Auto Group, LLC, Cabrera Hermanos, LLC, Cabrera Grupo Automotriz, LLC, Compañías Aseguradoras ABC y XYZ y Fulano de Tal. En consecuencia de ello, desestimó la *Querella* incoada por la apelante.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I**

El 2 de junio de 2022, la apelante presentó una *Querella* sobre despido injustificado, represalias y discrimen por edad y género,

Número Identificador

SEN2024 _____

contra los apelados, bajo el procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118. En la misma, alegó que laboró para los apelados desde el 7 de diciembre de 2007 hasta el 29 de marzo de 2022, fecha en la que fue despedida. En su querella, la apelante expuso que el 14 de junio de 2021, recibió un comunicado en el cual se le notificaba un cambio de puesto y compensación, sin previo aviso o diálogo, ello por una alegada falta de cooperación en la implementación de un nuevo proyecto llevado a cabo por la empresa. Sostuvo, que cursó una carta a la gerencia en la cual expresó su inconformidad con el cambio y alegó que nunca había sido consultada o incluida en el desarrollo del referido proyecto. En su querella, añadió que fue despedida injustificadamente por la empresa por haber emitido unos comentarios alegadamente difamatorios realizados en una publicación en la red social Facebook. Sostuvo, que tal publicación había sido utilizada por la empresa como un subterfugio para esconder el patrón de discrimen por edad y género y las represalias por no tener ideas respecto a los nuevos proyectos, de los cuales había sido objeto durante su último año de empleo.

En respuesta, el 17 de junio de 2022, la parte apelada presentó su *Contestación a la Querella*. En esencia, negó las alegaciones hechas en su contra y afirmó que el despido de la apelante obedeció a la conducta desplegada de esta, al incurrir en un patrón de abuso, intimidación, amenazas, maltratos y faltas de respeto, hacia sus compañeros de trabajo y su supervisor. Especificó, además, que la apelante había realizado unas publicaciones irrespetuosas y denigrantes en contra de Pedro Cintrón, Director del Departamento de Finanzas de la compañía, en la red social Facebook. Así mismo, añadió que esta había demostrado poca cooperación con la implementación de proyectos de reorganización y eficiencia de la empresa. Así, planteó que fue

inevitable la terminación de su empleo, ya que la conducta de la apelante afectaba el buen funcionamiento de la compañía y eran contrarias a su política. Al amparo de ello, los apelados plantearon que el despido de la apelante fue justificado conforme a las disposiciones de la Ley Núm. 80-1976, 29 LPRA sec. 185a-185m.

Tras varios incidentes procesales no pertinentes a la controversia ante nuestra consideración, el 8 de febrero de 2024, los apelados presentaron una *Solicitud de Sentencia Sumaria*.[1] En esta, sostuvieron que no existía controversia de hechos, en cuanto a que la terminación de empleo de la apelante fue justificada. Al respecto, reiteraron sus previos argumentos, al sostener que los propios actos de la apelante fueron los que provocaron su salida de la empresa, esto, por haber realizado comentarios soeces y denigrantes en una red social dirigidos a su supervisor, conducta que estaba prohibida por el Manual de Empleados de la compañía. Esbozaron a su vez, que la apelante no había sido objeto de represalias ya que, contrario a sus argumentos, no había sido despedida por no tener ideas, si no por haber demostrado poca cooperación en el proceso de implementación de proyectos. Finalmente, señalaron que no se podía demostrar la existencia de una causa de acción de discrimen, debido que la apelante no tenía evidencia que demostrara su causa

---

[1] Los apelados, acompañaron su *Solicitud de Sentencia Sumaria* con la siguiente prueba documental: (1) Certificados de Formación de Compañía de Responsabilidad Limitada de Cabrera Auto Grupo; (2) Deposición de Lyriam A. Mojica; (3) Depósito de Liquidación de 1 de abril de 2022; (4) Acuse de recibo de Manual de Empleados; (5) Manual de Empleados; (6) Contrato de Empleo Probatorio; (6) Declaración Jurada de Sandra Angueira; (7) Documento sobre cambio de puesto y compensación de Lyriam Mojica; (8) Carta de Ana M. Febles dirigida a Lyriam Mojica; (9) Carta sobre "Respuesta a Carta de Lyriam A. Mojica" dirigida a Lyriam A. Mojica firmada por Sandra Angueira; (10) Presentación de Cabrera Grupo, Departamento de Licencias y Registro, Revisión de Procesos: Proyecto Piloto; (11) Deposición de Xiomara González Sepúlveda; (12) Correo Electrónico de Pedro Cintrón dirigido a Lyriam A. Mojica; (13) Certificado Médico de Lyriam A. Mojica; (14) Correo Electrónico de Lyriam A. Mojica dirigido a Pedro Cintrón con copia a Sangra Angueira; (15) Carta sobre "Estatus de implementación de Programa Licencias 2021 y Tareas" dirigida a Lyriam A. Mojica firmada por Pedro Cintrón; (16) Descripción de Puesto de Supervisor de Licencia firmado por Lyriam A. Mojica; (17) Correo Electrónico de Pedro Cintrón dirigido a Sandra Angueira; (18) Captura del perfil de Facebook de Irene Iturrino, publicación del 16 de marzo de 2022; (19) Carta sobre "Terminación de Empleo por Conducta Difamatoria" del 29 de marzo de 2022.

de acción, por no configurarse los hechos bases sobre los cuales se sostiene una presunción de discrimen. Así, tras sostener que no existía controversia alguna en cuanto a la improcedencia de las causas de acción de epígrafe, los apelados solicitaron que se dictara sentencia sumaria a su favor.

Por su parte, el 28 de febrero de 2024, la apelante presentó *Oposición a Solicitud de Sentencia Sumaria.*[2] En esta, afirmó, que durante el tiempo que estuvo empleada no recibió amonestación alguna en cuanto a sus ejecuciones. Planteó que, la terminación de su empleo fue uno en represalias debido a que presentó una queja ante el Departamento de Recursos Humanos de la compañía sobre su inconformidad con su cambio de puesto y posteriormente fue despedida. Sobre los planteamientos relacionados a discrimen por edad y género, sostuvo que (1) un empleado de la compañía, varón, realizó comentarios en la misma publicación que alegadamente dio base para su despido sin que este fuese despedido o amonestado; y (2) que al ser despedida, sus funciones fueron delegadas a personas de menor edad, lo cual alegó evidenciaba el discrimen. Finalmente, planteó que el caso de autos no se podía resolver sumariamente debido a que existía controversia sobre si el despido de la apelante fue uno injustificado, discriminatorio y en represalias. Así, sostuvo que para adjudicar el caso era necesario que el Tribunal tuviera la oportunidad de adjudicar la credibilidad de los testigos.

Luego de ciertos trámites procesales, el 7 de mayo de 2024, el Tribunal de Primera Instancia, notificó la *Sentencia* aquí apelada. En la misma, declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria* interpuesta por los apelantes y dispuso que la apelante no había

---

[2] La parte apelante acompañó su pliego con la siguiente prueba documental: 1) Transcripción de Deposición de Lyriam A. Mojica; 2) Planillas de Contribución sobre Ingresos de Individuos 2019, 2020 y 2021; 3) Certificado Médico de Lyriam A. Mojica; 4) Carta con fecha del 15 de julio de 2021; 5) Carta sobre Estatus de Implementación de Programa de Licencias 2021 y Tareas; 6) Captura de pantalla de Publicación de Facebook.

presentado evidencia admisible que demostrara la existencia de una controversia material que debiera ser dilucidada en un juicio. En su dictamen, el tribunal sentenciador también expresó que la prueba presentada por la apelante no rebatió los hechos medulares presentados por los apelados en su solicitud de sentencia sumaria, por lo que los mismos se consideraban admitidos. Así, acogió todos los hechos expuestos por los apelados y determinó que el despido de la apelante fue justificado, ya que, se evidenció que fueron sus propios actos los que provocaron su salida de la empresa. En específico determinó, que: "[l]a querellante de forma directa y pública realizó comentarios en la red social de Facebook dirigidos a quien fue su supervisor directo, el Sr. Pedro Cintrón, Director del Departamento de Finanzas y gerencial de Cabrera. En dichos comentarios, la Sra. Mojica se refirió públicamente al Sr. Cintrón, utilizando lenguaje denigrante y soez. Además, en dichos comentarios la Querellante cuestionó la capacidad profesional del Sr. Cintrón y confirmó su intención de provocar un desagrado mediante comentarios irrespetuosos y procedió a colocar una fotografía del rostro del Sr. Cintrón, sin el consentimiento de este. Dicha conducta, por parte de una supervisora de un departamento de la Compañía es conducta reprochable y que atenta contra el buen y normal funcionamiento de la empresa".[3]

A su vez, estableció que a pesar de que la apelante planteó que había sido objeto de represalias por no tener ideas y limitarse a expresar que le dieran instrucciones, tales instancias no representaban una actividad protegida al amparo de la Ley Núm. 115-1991. Sobre las alegaciones de discrimen, el foro primario estableció que esta no cumplió con el esquema probatorio para presentar un caso de discrimen, ya que, no pudo evidenciar que a

---

[3] Véase, Apéndice del recurso, pág. 533.

raíz de su despido se benefició una persona que no pertenece al mismo grupo protegido, según es requerido por la Ley Núm. 80, *supra*. A tenor con sus determinaciones, el foro de primera instancia concluyó que el despido de la apelante fue uno justificado y legal, por lo que procedió a declarar *Ha Lugar* la solicitud de sentencia sumaria de los apelados, desestimando la causa de acción de epígrafe.

En desacuerdo, el 17 de mayo de 2024, la apelante compareció ante nos mediante el presente recurso de apelación. En el mismo formula el siguiente planteamiento de error:

> Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia Sumaria entre las partes concluyendo que no existía controversia de hechos materiales cuando los hechos materiales fueron debidamente controvertidos y existen elementos subjetivos de intención y credibilidad.

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a expresarnos.

**II**

**A**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria parcial para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1; *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos

materiales y esenciales de la causa que trate. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR __ (2024); *Oriental Bank v. Caballero García,* 212 DPR 671, 678 (2023); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Oriental Bank v. Caballero García,* supra, pág. 679; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y Otros,* 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 979-980*; Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia

la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA,* supra, pág. 941; *Ramos Pérez v. Univisión,* 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo,* supra, pág. 333. Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.*, supra pág. 677*; SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 432-433 (2013).

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.*, supra, pág. 678*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 434; *Rodríguez de Oller v. TOLIC,* 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria

en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo,* supra, págs. 333-334*; Mgmt. Adm. Servs., Corp. v. ELA,* 152 DPR 599, 611 (2000)*.* Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA,* supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 981-982; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> **Primero,** reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no

puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

**Segundo,** por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.

**Tercero,** en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto,** y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

### B

Por otro lado, la Asamblea Legislativa aprobó la Ley Núm. 100 de 30 de junio de 1959, conocida como la *Ley Contra el Discrimen en el Empleo,* 29 LPRA sec. 146 *et seq.,* para ofrecer una protección eficaz a los trabajadores contra diversos tipos de discrimen en el ámbito laboral. *Mestres Dosal v. Dosal Escandón,* 173 DPR 62, 68 (2008). Con su aprobación, los empleados recibieron una protección contra despidos por razón de edad, raza, color, sexo, origen social o nacional, condición social, afiliación política, ideas políticas o religiosas, o por ser víctima de violencia doméstica, agresión sexual o acecho. *Mestres Dosal v. Dosal Escandón,* supra, págs. 68-69.

Cabe señalar que en su origen, la Ley Núm. 100, *supra,* establecía una presunción controvertible a favor del empleado de que el despido había sido discriminatorio, salvo que el patrono demostrara la existencia de justa causa para el despido. *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 988. Sin embargo, con la aprobación de la Ley Núm. 4 de 26 de enero de 2017, conocida como la Ley de Transformación y Flexibilidad Laboral, 29 LPRA sec. 121, *et seq.,* se eliminó la disposición de presunción anterior y se estableció la norma del caso *prima facie* de discrimen conforme al estándar probatorio establecido en *McDonnell Douglas Corp. v. Green,* 411 US 792 (1973). Bajo tal esquema, el empleado deberá probar: (1) que pertenece a una clase protegida por la legislación; (2) que está cualificado para el puesto; (3) que fue objeto de una acción adversa; y (4) que se benefició otra persona que no pertenece al mismo grupo protegido. *Segarra Rivera v. Int'l. Shipping et al.*, supra, págs. 989-990; *McDonnell Douglas Corp. v. Green,* supra, pág. 802; *Guías para la Interpretación de la Legislación Laboral de Puerto Rico*, Departamento del Trabajo y Recursos Humanos, 1ra. Ed., 8 de mayo de 2019, págs. 157-158.

Una vez el empleado haya establecido el caso *prima facie,* le corresponderá al patrono demostrar que posee una explicación razonable que justifique sus acciones y que no se trata de un acto discriminatorio. *McDonnell Douglas Corp. v. Green,* supra. En estos casos, el patrono podrá: (1) presentar prueba que derrote el hecho básico de que el despido fue uno injustificado; (2) destruir el hecho presumido, que el despido fue discriminatorio o (3) presentar prueba para destruir el hecho básico y el presumido a la vez. *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 989; *López Fantauzzi v. 100% Natural,* 181 DPR 92, 124 (2011); *Díaz v. Wyndham Hotel Corp.,* 155 DPR 364, 390 (2001).

**C**

Por su parte, la Ley Núm.115 de 20 de diciembre de 1991, conocida como la *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial,* 29 LPRA sec. 194 *et seq.,* fue aprobado con el propósito de proveer protección a los empleados, tanto de las instrumentalidades gubernamentales como del sector privado, frente a determinadas actuaciones ilegítimas por parte de sus patronos. *Cordero Jiménez v. UPR,* 188 DPR 129, 135-136 (2013); *Feliciano Martes v. Sheraton,* 182 DPR 368, 392 (2011); Exposición de Motivos, Ley Núm. 115-1991. Específicamente, el antedicho estatuto crea una prohibición al patrono de despedir, amenazar o discriminar a un empleado, cuando este ofrezca o intente ofrecer un testimonio, información o expresión, ya sea de manera verbal o escrita, ante un foro administrativo, legislativo o judicial de Puerto Rico. 29 LPRA 194a. Siendo así, y salvo se trate de expresiones difamatorias, o que constituyan una divulgación de información privilegiada, toda conducta patronal de represalia en contra de sus empleados y fundamentada en un acto protegido por ley, no es susceptible de ser avalada.

Ahora bien, el Tribunal Supremo ha establecido que, para tener una causa de acción al amparo del estatuto en cuestión, el empleado tendrá que probar: (1) que participó en una de las actividades protegidas por la ley; y (2) que subsiguientemente fue despedido, amenazado o sufrió discrimen en el empleo. *Feliciano Martes v. Sheraton*, supra, págs. 393-394; *Ocasio v. Kelly Servs.,* 163 DPR 653, 684 (2005). En estos casos, el empleado afectado podrá probar su caso mediante evidencia directa o circunstancial, ello al establecer un nexo causal entre la conducta del patrono demandado y el daño sufrido.  Igualmente, una causa de acción al amparo de lo dispuesto en la Ley Núm. 115-1991, puede ser establecida por la vía

indirecta al probar un caso *prima facie* de represalia. Mediante esta vía deberá cumplir con lo siguiente: (1) participó en una actividad protegida por la ley; y (2) subsiguientemente fue despedido, amenazado o discriminado en su empleo. *Rivera Menéndez v. Action Service,* 185 DPR 431, 445 (2012); *S.L.G. Rivera Carrasquillo v. A.A.A.,* 177 DPR 345, 362 (2009). En este contexto, la proximidad temporal entre la acción adversa sufrida por el empleado y el ejercicio de la actividad protegida en la que incurrió bastará para cumplir con el *onus probandi* de un caso *prima facie* al amparo del precepto legal aquí en discusión. *Rivera Menéndez v. Action Service,* supra, pág. 446; *Feliciano Martes v. Sheraton,* supra, págs. 396-397. No obstante, y respecto al anterior esquema probatorio, nuestro estado de derecho reconoce que "no todo caso se configura dentro de un espacio temporal que pueda catalogarse como poco tiempo". *Feliciano Martes v. Sheraton,* supra, pág. 400. Así, cuando el criterio de temporalidad resulta insuficiente o poco determinante, el promovente de la acción deberá evidenciar (1) que fue tratado de forma distinta a otros empleados; (2) que existió un patrón de conducta antagónica en su contra; (3) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de incongruencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. El examen de dichas circunstancias se hará caso a caso. *Feliciano Martes v. Sheraton,* supra.

**D**

Finalmente, la Ley Núm. 80 de 30 de mayo de 1976, conocida como la *Ley Sobre Despidos Injustificados*, según enmendada, 29 LPRA sec. 185 *et seq.*, fue aprobada con el propósito de proteger el derecho de los trabajadores y desalentar los despidos injustificados. Este estatuto provee un remedio de compensación económica a empleados cuando sus patronos actúen en contravención a sus

disposiciones. 29 LPRA sec. 185a; *Díaz v. Wyndham Hotel Corp.,* supra, pág. 375. Conforme a esta ley, todo empleado que haya sido contratado por un periodo de tiempo indeterminado, mediante remuneración, que sea despedido sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono una indemnización. 29 LPRA sec. 185a; *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 775 (2022).

Con la aprobación de la Ley Núm. 4-2017, la Ley Núm. 80, *supra,* sufrió una serie de enmiendas, entre estas "se eliminó de la ley la frase que le imponía el peso de la prueba al patrono en los casos de [Ley Núm. 80]" *Ortiz Ortiz v. Medtronic,* supra, pág. 776 citando a E. García García, *El legado e implicaciones de la reforma laboral de 2017,* 86 Rev. Jur. UPR 1087, 1156 (2017).

Debemos enfatizar que, la Ley Núm. 80, *supra,* no proscribe la acción de despido, si no que le impone al patrono un elemento disuasivo para no despedir al trabajador sin que medie justa causa. Luis H. Sánchez Caso, *Reflexiones Sobre La Responsabilidad Civil de los Oficiales y Gerenciales en Reclamaciones de Despido o Discrimen,* 34 Rev. Jur. U.I.P.R. 183, 210-211 (2000). Por lo que, si existe justa causa, el empleado puede ser despedido sin penalidad para el patrono. *Santiago v. Kodak Caribbean, Ltd.,* 129 DPR 763, 775 (1992). En cuanto al concepto de justa causa, este es uno dinámico que dependerá de la relación particular del trabajo y de las circunstancias que rodean el evento motivador del despido. *Srio. del Trabajo v. G.P. Inds., Inc.,* 153 DPR 223, 243 (2021).

En cuanto a que se entenderá como justa causa, el Art. 2 de la Ley Núm. 85-1976, 29 LPRA sec. 185b, establece:

> Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal

funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:

(a) **Que el empleado incurra en un patrón de conducta impropia o desordenada.**

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) **Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.**

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento

29 LPRA sec. 185b. (Énfasis nuestro).

**III**

En su recurso, la parte apelante plantea, en esencia, que erró el Tribunal de Primera Instancia al dictar sentencia sumaria en el caso de epígrafe. En específico, aduce que, contrario a lo resuelto, existen controversias de hechos medulares en cuanto al alegado patrón de conducta de la apelante y sobre el impacto negativo que pudiesen tener los comentarios realizados en la publicación de la red social Facebook. Añade que existe a su vez, controversia en cuanto a si esta se negó a participar de los procesos de implementación de nuevos proyectos en la empresa. Del mismo modo, en su recurso, la parte apelante también arguye que foro *a quo* incidió y abusó de su discreción al determinar que no había rebatido los hechos medulares, por entender que los mismos habían sido demostrados y probados mediante evidencia. Por otro lado, impugna que el foro primario dispuso sobre asuntos que son propios de un juicio plenario por tratarse de asuntos de credibilidad, los cuales no pueden ser adjudicados mediante sentencia sumaria.

Un examen del expediente que nos ocupa nos lleva a concluir que el pronunciamiento que atendemos es uno realizado conforme a derecho y a la prueba presentada. Hemos ejercido nuestras funciones revisoras y determinamos que de los documentos presentados no surge controversia alguna de hechos medulares que amerite dirimir el presente asunto mediante el cauce ordinario de adjudicación. De igual forma, entendemos que la sentencia aquí apelada correspondió a una adecuada interpretación y aplicación del derecho pertinente a la materia que atendemos. Nos explicamos.

En principio, y en la observancia de las exigencias propias al ejercicio de las funciones de revisión que nos asisten, determinamos que, tras revisar la forma y contenido, tanto la solicitud de sentencia sumaria promovida por los apelados, como la oposición sometida por la apelante, los referidos pliegos observan los criterios y

exigencias procesales estatuidas en la Regla 36 de Procedimiento Civil, supra, y su doctrina interpretativa.

De igual modo, y en la ejecución de nuestras facultades, resolvemos, que tal cual dispuso el foro primario, no existen hechos medulares en controversia respecto a la razón del despido de la apelante. Surge de la documentación que forma parte del expediente, que la razón para el despido de la apelante fueron sus propios actos. La documentación incluida por las partes en sus respectivas mociones dispositivas revela que, la apelante realizó publicaciones con comentarios denigrantes dirigidos a su supervisor directo y gerencial de la empresa en la red social Facebook y que estos comentarios fueron acompañados por una fotografía del gerencial. Surge a su vez, que el Manual de Empleados de la Compañía[4], establece una prohibición al lenguaje irreverente, abusivo, insultante o amenazante hacia un supervisor, miembro de la gerencia, cliente, empleado, o visitante y que, de incurrir en uno de los referidos actos, justificaba medidas disciplinarias, las cuales incluyen el despido inmediato. Por tanto, la prueba documental estableció que el despido de la apelante se debió a sus propios actos y, que la compañía no abusó de su discreción, ni cometió arbitrariedad al despedir a la apelante.

En cuanto a las alegaciones de la apelante referente a que fue objeto de represalias y discrimen, coincidimos en que, aun tomando la prueba presentada de la manera más favorable posible para la apelante, esta no presentó evidencia que sustentara sus alegaciones. En específico, sobre sus alegaciones de represalias, esta plantea que fue objeto de ello por no tener ideas y limitarse a expresar que le dieran instrucciones, sin embargo, según establecido por el foro primario, ninguna de esas instancias son

---

[4] Véase, Apéndice del recurso, exhibit 7, pág. 184.

actividades protegidas por la Ley Núm. 115-1991. Por ende, la apelante no tiene una causa de acción de represalias ya que no pudo satisfacer el requisito de evidenciar que participó en una actividad protegida por ley para establecer un caso *prima facie*, según es requerido por la aludida Ley.

Por otro lado, en cuanto a las alegaciones de discrimen en el empleo por razón de edad, la apelante no presentó prueba alguna que estableciera su caso *prima facie*, ya que no pudo demostrar que con su despido se benefició una persona que no pertenece al mismo grupo protegido, según lo requiere la Ley Núm. 100, supra. Por lo contrario, la apelante descansó en meras alegaciones de que fue sustituida por una persona más joven. No pudiendo demostrar que se configuró la modalidad de discrimen que esta reclama, es decir que fue sustituida por una persona más joven, no se configuraron los hechos bases para poder sostener la presunción de discrimen.

Siendo de este modo, forzoso es concluir que la apelante no demostró de manera concreta que su despido fuera injustificado o consecuencia de represalias o de discrimen por su edad. A tenor con lo anterior, resolvemos que, conforme dispuesto, el despido de la apelante obedeció a una justa causa.

En conclusión, del expediente que nos ocupa podemos constatar que las determinaciones realizadas por el Tribunal de Primera Instancia están apoyadas en los documentos presentados. La Sentencia apelada interpreta y aplica de manera correcta la normativa vigente en nuestro estado de derecho, a la luz de la prueba que fue presentada ante el tribunal primario. De este modo, por la apelante no haber controvertido los hechos establecidos por los aquí apelados, resolvemos que no existe controversia de hechos alguna sobre la corrección del dictamen apelado.

## IV

Por los fundamentos antes expuestos, se *confirma* la sentencia apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones